IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 09-2051-MD-ALTONAGA

**In re:**

**DENTURE CREAM PRODUCTS
LIABILITY LITIGATION**

_____/

This Document Relates to Case No. 9:09-CV-80625-CMA
(Chapman v. The Procter & Gamble Distributing LLC)

**PROCTER & GAMBLE'S OPPOSITION TO PLAINTIFFS' MOTION
PURSUANT TO RULE 60(b) FOR RELIEF FROM FINAL JUDGMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ADDITIONAL FACTUAL BACKGROUND....................................................................................1

    A.   Plaintiffs Ignore The Joint Notice Of Filing Proposed Dismissal
        And Final Judgment And Renewed Motion ("Joint Notice") ...................................2

    B.   Plaintiffs' Position That There Was "Sufficient Evidence … To Proceed To
        Trial" Was (And Is) Without Merit..............................................................................3

    C.   Procter & Gamble's Argument In The Eleventh Circuit.............................................3

ARGUMENT ...............................................................................................................................5

    A.   Rule 60(b) Does Not Apply To Plaintiffs' Unilateral, Strategic Choice.....................5

    B.   Plaintiffs Cannot Appropriately Seek Relief That Would Allow Them To
        Maintain Their Legally Unsustainable Position That They Have Sufficient
        Evidence To Proceed To Trial.....................................................................................8

CONCLUSION............................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Citibank N.A. v. Data Lease Fin. Corp.*,
904 F.2d 1498 (11th Cir. 1990) ...............................................................................5, 6, 8

*Eskridge v. Cook Cnty.*,
577 F.3d 806 (7th Cir. 2009) ............................................................................................6

*Evans v. Matrixx Initiatives, Inc.*,
2009 WL 2914252 (M.D. Fla. Feb. 18, 2009) ..............................................................9

*Fackelman v. Bell*,
564 F.2d 734 (5th Cir. 1977) ............................................................................................9

*Federal's Inc. v. Edmonton Inv. Co.*,
555 F.2d 577 (6th Cir. 1977) ............................................................................................6

*Greater Baton Rouge Golf Ass'n v. Recreation & Parks Comm'n*,
507 F.2d 227 (5th Cir. 1975) ............................................................................................8

*Hendrix ex rel. G.P. v. Evenflo Co.*,
609 F.3d 1183 (11th Cir. 2010) ......................................................................................10

*Kai Wu Chan v. Reno*,
1997 WL 122783 (S.D.N.Y. March 17, 1997) ............................................................7

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
501 U.S. 350 (1991)............................................................................................................7

*Larsen Co. v. Consol. Mktg., Inc.*,
148 F.R.D. 664 (N.D. Ga. 1993)........................................................................................8

*Mazzone v. Stamler*,
157 F.R.D. 212 (S.D.N.Y. 1994) ......................................................................................7

*McClain v. Metabolife Int'l, Inc.*,
401 F.3d 1233 (11th Cir. 2005) ......................................................................................10

*Nemaizer v. Baker*,
793 F.2d 58 (2d Cir. 1986)................................................................................................6

*Nisson v. Lundy*,
975 F.2d 802 (11th Cir. 1992) ..........................................................................................5

*OFS Fitel, LLC v. Epstein Becker & Green, P.C.*,
 549 F.3d 1344 (11th Cir. 2008) ....................................................................................4

*Pantages v. Cardinal Health 200, Inc.*,
 2009 WL 2244536 (M.D. Fla. July 27, 2009) ............................................................9

*Rink v. Cheminova, Inc.*,
 400 F.3d 1286 (11th Cir. 2005) ..................................................................................10

*Taylor Brands, LLC v. GB II Corp.*,
 627 F.3d 874 (Fed. Cir. 2010)......................................................................................4

*United States v. Real Prop. & Residence Located at Route 1, Box 111, Firetower Rd.,*
 *Semmes, Mobile Cnty., Ala.*,
 920 F.2d 788 (11th Cir. 1991) ......................................................................................8

*Wilson v. Taser Int'l, Inc.*,
 303 Fed. App'x 708 (11th Cir. 2008) ...........................................................................9

**OTHER AUTHORITIES**

Rule 60(b) ..................................................................................................... *passim*

Rule 702............................................................................................................................9

Defendants The Procter & Gamble Distributing LLC and The Procter & Gamble Manufacturing Company (collectively, "Procter & Gamble") respectfully respond to Plaintiffs' motion under Federal Rule of Civil Procedure 60(b) ("Rule 60(b)") seeking relief from the final judgment entered by this Court on June 24, 2011, based on an alleged mutual mistake. *See* Pls. Mot. ("Motion") [ECF Nos. 1757, 1757-2].

## PRELIMINARY STATEMENT

All parties wanted to see an appeal of this Court's *Daubert* ruling. But only Plaintiffs insisted on pursuing such an appeal while reserving the position that they could go to trial even after the *Daubert* ruling. Procter & Gamble opposed this position, and the Court never endorsed this position, but Plaintiffs still insisted on it. It was this unilateral, strategic choice that doomed Plaintiffs' appeal, and it now forecloses Plaintiffs' request for Rule 60(b) relief.

Plaintiffs, however, ask this Court to vacate its final judgment and hold a scheduling conference "to discuss further proceedings" in this case. Eleventh Circuit precedent makes clear that Rule 60(b) relief is inappropriate if it would unfairly prejudice the opposing party. Procter & Gamble would be unfairly prejudiced if it were forced to conduct "further proceedings" based on nothing more than Plaintiffs' meritless position that they can prove general and specific causation with just treating physician testimony—a position that the Eleventh Circuit has repeatedly rejected. As a result, Plaintiffs' Motion should be denied.

## ADDITIONAL FACTUAL BACKGROUND

Plaintiffs omit significant details from the Motion's "Background" presentation that are essential to evaluating the Motion.[1]

---

[1]   There are also several inaccuracies in the Motion's Background section, but as they are not material to the Court's decision whether to grant Rule 60(b) relief, Procter & Gamble will not address those inaccuracies here.

**A.**     **Plaintiffs Ignore The Joint Notice Of Filing Proposed Dismissal And Final Judgment And Renewed Motion ("Joint Notice")[2]**

Plaintiffs discuss the Joint Stipulation of Dismissal with Prejudice that the parties filed on June 23, 2011 in the Motion, but they avoid mention of the Joint Notice that the parties submitted with the Joint Stipulation. That Joint Notice clearly alerted Plaintiffs that their insistence that they had sufficient evidence to go to trial despite this Court's *Daubert* ruling risked jeopardizing their right to appeal that ruling:

> In the Proposed Order, Plaintiffs state as follows: "Plaintiffs continue to maintain that sufficient evidence remains to permit Plaintiffs to proceed to trial despite this Court's June 13, 2011 Order, however, the Court has not rendered an opinion or order in this regard." **Procter & Gamble recognizes that with this language included, the Proposed Order may not meet the Court's requirement that the parties submit a proposed order in support of the entry of a dismissal with prejudice and a final judgment that preserves Plaintiffs' right to appeal**.

Joint Notice at 1-2 (emphasis added). The purportedly "sufficient evidence" was Plaintiffs' insistence that they could prove both general and specific causation through the testimony of Ms. Chapman's treating physicians. *See, e.g.*, Hr'g Tr. 7:21-8:1, June 14, 2011 ("Again, in the context of the Chapman case, particularly notwithstanding the Court's ruling on general causation and specific causation with these experts in the context of the Marianne Chapman case, she does have treating experts who have opined her condition was caused by her use of Fixodent that were not the subject of the Daubert motion.").[3] Plaintiffs therefore had been made aware that "maintain[ing] that sufficient evidence remain[ed] to permit [them] to proceed to trial" after the Court issued its *Daubert* ruling created a known risk that the Joint Stipulation "may not

---

[2]     Joint Notice [ECF No. 1262], attached hereto as Exhibit A.

[3]     *See also* Hr'g Tr. at 8:18-23, June 16, 2011 ("what I cannot do because I do disagree with Mr. Soto on the issue of treating physicians and causation and there's certainly some precedent here in the 11th Circuit that if it's within what the treating physician needed to do to get a diagnosis was to determine causation, there's certain case law that goes both ways in that regard.").

meet" the requirements for "a final judgment that preserves Plaintiffs' right to appeal." Plaintiffs nevertheless insisted on keeping this language in the Joint Stipulation. *See* Joint Notice at 2 ("The parties have met and conferred and Procter & Gamble does not believe this language is necessary, but the Plaintiffs believe it is.").

Procter & Gamble does not dispute that, following the hearing before this Court on June 16, 2011, it was the *intention* of all parties that a stipulated judgment be entered and that Plaintiffs thereafter seek appellate review of this Court's *Daubert* ruling. But it was plainly Plaintiffs' unilateral and strategic choice to seek such review while still holding to the position that they had "sufficient evidence" to try their case notwithstanding the *Daubert* ruling – a position that Procter & Gamble expressly opposed and that this Court never expressly endorsed.

### B. Plaintiffs' Position That There Was "Sufficient Evidence … To Proceed To Trial" Was (And Is) Without Merit

The Motion also does not address the merits of the position that Plaintiffs took over the opposition of Procter & Gamble. Plaintiffs could not prove general causation based on testimony from Ms. Chapman's treating physicians based on whatever differential diagnoses they may have performed for Ms. Chapman. *See* pages 9-10, *infra*. Furthermore, in this case Plaintiffs did not submit expert reports from Ms. Chapman's treating physicians, which provided an additional, independent basis for why it was impossible for them to have "sufficient evidence … to proceed to trial." Expert testimony would be required to prove general causation at trial (*i.e.*, that Fixodent could cause Ms. Chapman's medical ailments), but Plaintiffs had no such expert testimony to present at trial.

### C. Procter & Gamble's Argument In The Eleventh Circuit

Plaintiffs correctly note that Procter & Gamble argued to the Eleventh Circuit that Plaintiffs had standing to appeal. They ignore, however, the fact that Procter & Gamble also

3

advised the Eleventh Circuit that Plaintiffs' insistence that they had enough evidence even after this Court's *Daubert* ruling to try their case made jurisdiction a close question. Appellees' Statement in Response to Jurisdictional Questions, [ECF No. 1757-11] at 4 ("Closer is the question of whether Appellants' appeal is 'within constitutional limits' because Appellants 'continue[d] to maintain' in the District Court (over Procter & Gamble's objection) that . . . 'sufficient evidence remain[ed] to permit [Appellants] to proceed to trial.'").

Procter & Gamble acknowledged to the Eleventh Circuit that, unlike in *OFS Fitel*, Plaintiffs did not concede that this Court's pretrial ruling was case dispositive. *See id.* at 5 (citing *OFS Fitel, LLC v. Epstein Becker & Green, P.C.,* 549 F.3d 1344 (11th Cir. 2008)). But Procter & Gamble argued that this did not defeat appellate jurisdiction because "while Appellants may not have agreed that the District Court's [*Daubert*] order was case-dispositive, it in fact was case-dispositive because it excluded all of Appellants' expert witness testimony on general causation," and "[w]ithout such expert testimony, Appellants could not prove their claims." *Id.* Relying on a Federal Circuit precedent, Procter & Gamble argued further that the Eleventh Circuit should deem Plaintiffs to have waived their reservation that they had "sufficient evidence … to proceed to trial" by their agreeing to the entry of final judgment against them. *See id*. at 6-7 (citing *Taylor Brands, LLC v. GB II Corp.*, 627 F.3d 874, 879 (Fed. Cir. 2010)).

In dismissing Plaintiffs' appeal, the Eleventh Circuit did not adopt the *Taylor Brands* approach. Instead, it applied a strict interpretation of *OFS Fitel*. That interpretation was not advocated by Procter & Gamble (or Plaintiffs); nor was it novel nor or unforeseen, as Plaintiffs contend. *See* Mot. at 9, 16-17. Plaintiffs' reservation that they could prove causation at trial with treating physician testimony turned what should have been a straightforward stipulated

4

judgment and appeal into a close question of appellate jurisdiction.  That is precisely why Procter & Gamble opposed inclusion of such a reservation in the Joint Stipulation.  *See* Joint Notice 1-2.

**ARGUMENT**

Plaintiffs are correct that the decision whether to grant relief under Rule 60(b) is "committed to the sound discretion" of this Court, Mot. at 10, and furthermore that Rule 60(b) "is to be given a liberal and remedial construction."  *Nisson v. Lundy*, 975 F.2d 802, 807 (11th Cir. 1992).  Neither the Court's discretion nor the remedial reach of Rule 60(b), however, is without limits, and Plaintiffs' Motion exceeds those limits.

**A.      Rule 60(b) Does Not Apply To Plaintiffs' Unilateral, Strategic Choice**

As the facts recited above reveal, the situation Plaintiffs find themselves in here was not the product of a mutual mistake among the parties and the Court.  Instead, it was the result of a deliberate, strategic decision by Plaintiffs.  They wanted to have their proverbial cake and eat it too:  They wanted to be able to appeal this Court's *Daubert* ruling, but still reserve the right, if they lost the appeal, to come back to this Court and insist that they had "sufficient evidence" nevertheless to go to trial.  Procter & Gamble expressly informed Plaintiffs that they were incorrect in claiming to have sufficient evidence to try their case following this Court's *Daubert* ruling.  Procter & Gamble further expressly informed Plaintiffs that such a claim jeopardized their ability to appeal the Court's *Daubert* ruling.  Plaintiffs nevertheless refused to withdraw their position.

The record established that Plaintiffs were aware of the risk of their position:  Procter & Gamble expressly informed them of it.  Even if they did not understand the "legal consequences of [their] chosen course of action," that is no basis for Rule 60(b) relief.  *Citibank N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1505 (11th Cir. 1990).  In *Citibank*, Data Lease filed claims

5

against Citibank and certain of its directors that were installed by Citibank. Data Lease then entered into a settlement that dismissed with prejudice all claims against the directors but expressly reserved its vicarious liability claims against Citibank. Citibank moved to dismiss all claims against it, arguing that under Florida law "a principal cannot be held liable if the agent is exonerated." *Id.* at 1500. The district court agreed and dismissed all claims against Citibank. Data Lease thereafter filed a Rule 60(b) motion, arguing that it expressly did not intend to dismiss its claims against Citibank. The district court denied the Rule 60(b) motion. The Eleventh Circuit affirmed, holding that "an attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment under Rule 60(b)." *Id.* at 1505 (internal quotation marks and citation omitted). Other courts of appeals have reached similar results. *See, e.g.*, *Eskridge v. Cook Cnty.*, 577 F.3d 806, 810 (7th Cir. 2009) ("Since counsel made a deliberate, strategic choice to dismiss the federal lawsuit and proceed against Cook County in state court, counsel's incorrect assessment of the consequences of that choice did not compel relief under Rule 60(b)."); *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986) (counsel's failure to understand that a stipulated dismissal with prejudice of state-law claims would have *res judicata* effect on later asserted federal claims did not warrant Rule 60(b) relief because "[m]ere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief.").[4]

---

[4] *See also Federal's Inc. v. Edmonton Inv. Co.*, 555 F.2d 577, 583 (6th Cir. 1977) ("Rule 60 was not intended to relieve counsel of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise. Federal's [Inc.] chose to rely on a legal theory during the arrangement proceedings, which, if upheld, would have relieved it of liability under the lease due to Edmonton's failure to file a claim. Federal's decision was not one conceived in ignorance. Such a deliberate choice is not the type of mistake contemplated by Rule 60.").

Plaintiffs' error was one of their own making. They refused to abandon their meritless position that they could prove causation at trial through the testimony of Ms. Chapman's treating physicians even after Procter & Gamble warned them of the consequences of this position. This fact distinguishes the cases Plaintiffs cite to support Rule 60(b) relief here. Mot. at 13-14 (citing *Mazzone v. Stamler,* 157 F.R.D. 212 (S.D.N.Y. 1994), and *Kai Wu Chan v. Reno,* 1997 WL 122783 (S.D.N.Y. Mar. 17, 1997)). In *Mazzone*, both parties executed a stipulated judgment under the mistaken belief that the plaintiffs' Rule 10b-5 claim was time-barred under the Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991), when in fact Congress had restored the pre-*Lampf* limitations periods several weeks before the stipulated judgment was executed. *Mazzone*, 157 F.R.D. at 213. But in this case, unlike in *Mazzone*, there was no mutual mistake about the law. Procter & Gamble warned Plaintiffs in the Joint Notice that their insistence that they could go to trial with treating physician testimony risked jeopardizing their appeal, but Plaintiffs consciously, and strategically, elected to take this risk. *Kai Wu Chan* offers even less support for Plaintiffs' Motion. In that case, the court dismissed plaintiffs' claims based on a representation by the United States Government, the opposing party, that turned out be inaccurate. *Kai Wu Chan*, 1997 WL 122783, at *6 ("The Opinion's holding … was, as discussed more fully below, legally erroneous. This error was based on the Court's belief, supported by the Government's representation at oral argument, that Plaintiffs' constitutional claims would be heard by the Immigration Judge and the BIA in the course of deportation proceedings."). Here, Procter & Gamble's representation to Plaintiffs – that they risked losing their right to appeal by contending that they had "sufficient evidence" to go to trial after the Court's *Daubert* ruling – was legally correct. Plaintiffs chose to accept that risk.

7

Numerous courts have held that the burden to obtain Rule 60(b) relief is heavier when the party seeks to upset an "agreed-upon disposition." *See, e.g.*, *Larsen Co. v. Consol. Mktg., Inc.*, 148 F.R.D. 664, 666 (N.D. Ga. 1993). Furthermore, the Eleventh Circuit has made clear that "attorney negligence or oversight is rarely grounds for relief." *United States v. Real Prop. & Residence Located at Route 1, Box 111, Firetower Rd., Semmes, Mobile Cnty., Ala.*, 920 F.2d 788, 792 (11th Cir. 1991) ("We conclude that the U.S. Attorney's failure to understand the implications of the district court's judgment … cannot, even under the most liberal construction, qualify for relief under Rule 60(b)."). In this case, Plaintiffs made a strategic decision to attempt to appeal this Court's *Daubert* ruling, while at the same time reserve the position that they could insist on a trial with only treating physicians even if they lost their appeal. They may not have "evaluate[d] carefully the legal consequences of [that] chosen course of action," but such failure "provides no basis for relief from a judgment under Rule 60(b)." *Citibank*, 904 F.2d at 1505.[5]

**B.      Plaintiffs Cannot Appropriately Seek Relief That Would Allow Them To Maintain Their Legally Unsustainable Position That They Have Sufficient Evidence To Proceed To Trial**

The Motion is also deficient in vaguely proposing, as the relief sought, that the Court vacate its prior final judgment and "hold a scheduling conference … to discuss further

---

[5]      Plaintiffs erroneously contend that a particularly generous Rule 60(b) standard should apply to their motion because the final judgment here "foreclose[d] resolution of the litigation on the merits," citing *Greater Baton Rouge Golf Ass'n v. Recreation & Parks Commission,* 507 F.2d 227 (5th Cir. 1975). Mot. at 11. But in *Greater Baton Rouge*, the district court dismissed the plaintiff's case with prejudice because plaintiff's counsel was 28 minutes late for the hearing on the plaintiff's motion for injunctive relief, leaving the plaintiff with no opportunity to present its case to the court. *Id*. at 228-29. Here, however, Plaintiffs were given more than ample opportunity to present their case to the Court: They offered multiple expert reports on causation, and they submitted scores of briefs and exhibits to the Court attempting to defend those expert reports against Procter & Gamble's *Daubert* challenge. The Court reviewed all of this material, conducted a very lengthy *Daubert* hearing, and then issued a very thorough, detailed *Daubert* decision. This decision did not "foreclose[] resolution of the litigation on the merits"; it simply foreclosed any possibility that Plaintiffs could prevail at trial on their claims because it recognized that their case was without merit.

8

proceedings in th[is] case." Mot. at 2, 18. Eleventh Circuit precedent is clear that Rule 60(b) relief should not be granted where it would unfairly prejudice an opposing party. *See Fackelman v. Bell*, 564 F.2d 734, 736 (5th Cir. 1977) ("Weighing against the grant of a 60(b) motion is the desirability of finality in judgments. This is particularly true where the reopening of the judgment could unfairly prejudice the opposing party."). Plaintiffs' requested relief ignores this requirement.

Procter & Gamble would be unfairly prejudiced if it were forced to conduct further proceedings in this case based on Plaintiffs' meritless position that, even after this Court's *Daubert* ruling, they have sufficient evidence to go to trial because they could use testimony from Ms. Chapman's treating physicians to establish causation at trial. No expert reports were submitted by these physicians, and the law is unwavering on the point that such non-expert treating physician testimony simply cannot prove general causation at trial. *See Wilson v. Taser Int'l, Inc.*, 303 Fed. App'x 708, 712 (11th Cir. 2008) (while treating physicians may offer lay testimony "regarding [their] observations and decisions during treatment of a patient," the treating physician's hypothesis about the cause of an injury is "expert testimony for which the Court must perform its essential gatekeeping function as required by *Daubert*."); *Pantages v. Cardinal Health 200, Inc.*, 2009 WL 2244536, at *3 (M.D. Fla. July 27, 2009) ("[w]hile a treating physician may testify as a lay witness regarding his observations and decisions during treatment of a patient, the treating physician cannot provide lay witness testimony concerning his hypothesis about the cause of an injury"); *Evans v. Matrixx Initiatives, Inc.*, 2009 WL 2914252, at *5 (M.D. Fla. Feb. 18, 2009) (holding that treating physician testimony about the cause of the plaintiff's injury "without question fall[s] within the category of scientific testimony" of an expert witness subject to the requirements of "Daubert and Rule 702").

9

Indeed, even if Ms. Chapman's treating physicians were entitled to testify to differential diagnoses they performed concerning her ailments notwithstanding that they did not submit expert reports in this case, Plaintiffs still could not prevail at trial.  Such diagnostic examinations, as a matter of law, cannot prove general causation – *i.e.*, that Fixodent could cause Ms. Chapman's ailments.  *See Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1195 (11th Cir. 2010) ("a fundamental assumption underlying [differential etiology] is that the final, suspected 'cause' ... must actually be capable of causing the injury"; and "the experts' purported use of the differential etiology method will not overcome a fundamental failure to lay the scientific groundwork for the theory that traumatic brain injury can, in general, cause autism").  *See also McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1253 (11th Cir. 2005) ("In the absence of [a showing of general causation] … a differential diagnosis generally may not serve as a reliable basis for an expert opinion on causation in a toxic tort case"); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1295 (11th Cir. 2005) ("necessarily antecedent to testimony from the treating physicians that defective Fyfanon caused the class representatives' injuries is evidence that the Fyfanon was defective or negligently handled in the first place. Because the district court found, and we agree, that there was no reliable expert evidence that the Fyfanon used over Tampa was defective without Matson's testimony, the testimony of the treating physicians is irrelevant and therefore was properly excluded.").

Plaintiffs' Motion refuses to accept the foregoing, indisputable reality, but instead clings to the notion that there is some basis for "further proceedings" in this case.  It is a continuation of Plaintiffs' desire to keep all of their options open, even those that are legally without merit.  As just explained, however, there is absolutely no reason for further proceedings in this case, and it would be improper to force any such proceedings – and the time and expense associated with

them – on either this Court or Procter & Gamble simply because Plaintiffs refused back in June 2011 and still refuse today to admit that this Court's *Daubert* ruling was case dispositive. It is only Plaintiffs – not this Court and not Procter & Gamble – who should, and must, bear the cost of their deliberate, strategic decision to maintain an unsustainable legal position despite being expressly warned of the consequences of doing so.

## **CONCLUSION**

For the forgoing reasons, Procter & Gamble respectfully requests that the Court deny the Motion. Alternatively if the Court were inclined to grant the Motion, it should do so only on the condition that Plaintiffs abandon their meritless position that they have "sufficient evidence remain[ing] to permit Plaintiffs to proceed to trial" in this case, after which the Court would then enter final judgment against Plaintiffs.

Dated: April 13, 2012

     /s/ Edward Soto
Edward Soto (FBN 0265144)
edward.soto@weil.com
Christopher R.J. Pace (FBN 0721166)
christopher.pace@weil.com
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Facsimile: (305) 374-7159

*Attorneys for Defendants The Procter & Gamble Manufacturing Company and The Procter & Gamble Distributing LLC*

11

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2012, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

/s/ Edward Soto
Edward Soto (Florida Bar No.0265144)
Weil, Gotshal & Manges LLP
1395 Brickell Ave.
Suite 1200
Miami, Florida 33131
Phone: (305)577-3100
Fax: (305)374-7159
Email: edward.soto@weil.com

*Attorneys for Defendants The Procter & Gamble Manufacturing Company and The Procter & Gamble Distributing LLC*

12