UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  09-2051-MD-ALTONAGA/SIMONTON

In re:

DENTURE CREAM PRODUCTS
LIABILITY LITIGATION,
_____/

**ORDER DENYING DEFENDANTS' MOTION
TO STRIKE THE SUPPLEMENTAL REPORT
OF PLAINTIFFS' EXPERT DR. FREDERICK ASKARI**

Presently pending before the Court is Defendant Proctor & Gambles' Motion to Strike the Supplemental Report of Plaintiffs' Expert Dr. Frederick Askari (DE # 1831). The Plaintiffs have filed an Opposition (DE # 1852) and the Proctor & Gamble Defendants ("P&G" or "Defendants") have filed a Reply (DE # 1875). The Motion has been referred to the undersigned Magistrate Judge (DE ## 611, 1048). For the following reasons, P&G's Motion to Strike is DENIED.

I.     BACKGROUND

On April 13, 2012, the Honorable Cecilia M. Altonaga, the District Judge assigned to this matter, issued an Order setting forth revised pretrial discovery dates in this action (DE # 1784). That Order provided, among other things, that Plaintiffs were to make their generic expert disclosures pursuant to Rule 26(a)(2) by April 30, 2012, and had until May 30, 2012 to supplement their generic expert reports. In addition, the scheduling Order provided that the P&G Defendants had to serve their generic expert reports and any rebuttal generic expert reports by July 30, 2012 and the Plaintiffs had to identify any rebuttal generic experts and serve their reports by August 30, 2012. The Order further provided that depositions of all generic experts were to be conducted

between August 30, 2012 and October 30, 2012, with the Parties filing their *Daubert* motions on general expert causation on or before November 9, 2012.

On April 30, 2012, the Plaintiffs provided the Defendants with the initial report of Dr. Frederick Askari, the Plaintiffs' causation expert. On May 30, 2012, the Plaintiffs served Dr. Askari's Supplemental Report. The instant Motion followed.

II.     POSITION OF THE PARTIES

The P&G Defendants have filed this Motion seeking to strike Dr. Askari's supplemental expert report which was served on the P&G (DE # 1852). The Defendants contend that although the Plaintiffs technically timely served Dr. Askari's "supplemental report", that report should be stricken because the report is legally insufficient, as it is not truly a supplemental report, and thus violates the Court's Scheduling Order and the Federal Rules of Civil Procedure. Specifically, the P&G Defendants assert that Dr. Askari's May 30, 2012 Report did not offer any supplemental opinions and, in fact, did not contain any opinions at all. Rather, according to P&G, the Report advises that Dr. Askari intends to conduct a "Fixodent Copper Blockade Study" ("Fixodent Study") and opine on the results of that study at some indeterminate future time. P&G asserts that any future opinions from that study will not be disclosed until after the Court ordered deadlines for Plaintiffs' expert disclosures and after the deadline for P&G's generic and rebuttal expert disclosures. In addition, P&G contends that the study referenced in the Supplemental Report was not mentioned in Dr. Askari's initial report served on April 30, 2012. Further, P&G asserts that all of the information which Dr. Askari relies on to perform the new study has been readily available to the Plaintiffs since the commencement of this action, nearly three years ago. Therefore, P&G requests that the Court strike Dr. Askari's Supplemental Report, as well any future testimony regarding

2

the "Fixodent Copper Blockade Study" referenced in that Report pursuant to Federal Rule of Civil Procedure 37(c).

In response, the Plaintiffs contend that the purpose of Dr. Askari's supplemental report is "primarily to place P&G on notice of his position as a Principal Investigator on a Clinical Study involving Fixodent, which he anticipates will be completed by in or about August 2012." (DE # 1852 at 5). Plaintiffs thus assert that any challenge that the Defendants raise to the Report as being legally insufficient is premature, and that P&G is unable to demonstrate any prejudice to P&G in allowing the Supplemental Report to stand at this juncture. The Plaintiffs contend that this is particularly true because the expert depositions are not set to commence until August 30, 2012, and *Daubert* briefing is not set to begin until November, 2012. Further, the Plaintiffs contend that pursuant to Federal Rules of Civil Procedure 26 and 37, the Plaintiffs are required to supplement any expert reports and thus had to comply with those rules by serving the May 30, 2012 Supplemental Report.

Plaintiffs also take issue with P&G's contention that "new" material is not "supplemental" material, and instead argue that the report is "supplemental" because it simply sets forth an additional basis of Dr. Askari's opinion set forth in his initial report. Plaintiffs further dispute that they simply waited to reveal the Fixodent Study but contend instead that they have been designing and preparing this "complicated study" which "takes time to finalize." Further, the Plaintiffs contend that P&G was advised to conduct a similar study by a consultant but decided not to follow through on that study. Thus, the Plaintiffs contend that they have acted in good faith in disclosing the study and, in doing so, avoided causing P&G any prejudice. In this regard, the Plaintiffs contend that they could have waited until their rebuttal reports were due and then

disclosed more complete study results, but instead chose to disclose the study at the "earliest possible moment in time." Finally, Plaintiffs contend that the severe sanction of striking Dr. Askari's supplemental report is not warranted under the facts of this case, and emphasize the importance of Dr. Askari's testimony on the issue of general causation.

In reply, P&G argues that the Plaintiffs may not use a supplemental report as a "placeholder" for future opinions to be rendered by Dr. Askari, and further argues that the supplemental report may not be used to "bolster" Dr. Askari's previous opinions. Rather, P&G contends that the purpose of a supplemental report is to correct or address any incomplete information in an expert's initial report. In addition, P&G asserts that the Plaintiffs have failed to provide any basis for their failure to disclose the Fixodent Study earlier and also contends that the tardy disclosure acts to prejudice P&G because P&G is unable to submit rebuttal expert reports or adequately prepare for Dr. Askari's deposition because the study will not even be completed until early August, at the earliest. Finally, P&G contends that it does not have to demonstrate that the Plaintiffs acted in bad faith in failing to disclose Dr. Askari's reliance on the study earlier in order for this Court to strike the expert disclosure. Rather, P&G contends it only need show that there was no substantial justification for Plaintiffs' failure to make the disclosure earlier, and that the tardy disclosure is not harmless.

### III. LEGAL ANALYSIS

Federal Rule of Civil Procedure 26 (a)(2) entitled "Disclosure of Expert Testimony." provides,

> (A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under

>Federal Rule of Evidence 702, 703, or 705.
>
>(B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
>(i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
>(ii) the facts or data considered by the witness in forming them;
>
>(iii) any exhibits that will be used to summarize or support them;
>
>(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
>(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
>(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2).  In addition, Rule 26(e)(1)(A) requires supplementation when a party learns that in some material respect the original expert disclosure is incomplete or incorrect, or when otherwise ordered by the court.  Fed. R. Civ. P. 26(e)(1)(A).  Thus,"Rule 26(e) envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure was incorrect or incomplete and, therefore, misleading."  *Whetstone Candy Co., Inc. v. Nestle USA*, No. 3:01-CV-415-J-25HTS, 2003 WL 25686830 n.1 (M.D. Fla. June 2, 2003) quoting *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002); *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-SAJ, 2008 WL 4832658, at *2 (N.D.Okla. Oct. 28, 2008) (same).

In this case, as correctly noted by P&G, Dr. Askari's May 30, 2012 Supplemental Report does not provide any new opinions, findings or scientific conclusions. In addition, the report is not offered to correct, complete or cure a defect in Dr. Askari's April 30, 2012 initial report. The Plaintiffs do not dispute this point. In fact, the report states just the opposite with, "As stated in my April 30 Report, and my earlier opinion. . .it is my belief that further study of zinc in Fixodent, including the above Fixodent Copper Blockade Study, is unnecessary for any reasonably competent scientist or medical doctor to reach a general causation opinion that Fixodent is capable of causing copper deficiency and resulting hematological and neurological injuries." (DE # 1831-1 at 4). In addition, the final paragraph of Dr. Askari's Supplemental Report provides, "I would like to supplement my opinions to include data and analysis from the Fixodent Copper Blockade Study when the Study results become available, which I anticipate to be as early as August 2012." (DE # 1831-1). Thus, the Supplemental Report is actually a request by Dr. Askari to provide additional test results of a test which, at the time that the Supplemental Report was served on the P&G Defendants, had yet to be completed. The disclosure therefore is actually a notification of intention to seek the introduction of an additional study and opinions based upon that study, and is clearly not a supplemental report as contemplated by Rule 26(e).

In an effort to avoid this conclusion, the Plaintiffs contend that the Supplemental Report of Dr. Askari is, in fact, supplemental because it offers an additional basis for his opinion. However, this contention is without merit as, by the Plaintiffs' own admission, at the time of the disclosure of the Supplemental Report, the Blockade test had not yet been completed. Thus, it is unclear how any results of that test would provide the basis for Dr. Askari's opinion, which had already been disclosed in his initial report. Rather, if

6

the results of the study support Dr. Askari's conclusions disclosed in his April 30, 2012 opinion, those results would simply act to bolster his prior opinions. This sort of "supplementation" has been rejected by several courts. See e.g. Akeva *L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) (rejecting party's contention that expert's second report which was based upon a "new" test not referred to in the expert's initial report was a "supplemental report" rather than an "out-of-time disclosure."). As stated in *Whetstone Candy Co., Inc. v. Nestle USA*, 2003 WL 25686830 (M.D. Fla. 2003), "supplementation is not appropriate whenever a party wants to bolster or submit additional expert opinions because to permit such supplementation, would reek havoc in docket control and amount to unlimited expert opinion preparation." *Id.* citing *Akeva L.L.C.,* 212 F.R.D. at 310. Indeed, as made clear by the Eleventh Circuit, the supplementation of an expert report "is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy." *Cochran v. Brinkmann Corp.*, 2009 WL 4823858 at * 5 (N.D. Ga. Dec. 9, 2009), aff'd, 381 F. App'x. 968 (11th Cir. 2010); accord *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-SAJ, 2008 WL 4832658, at *2 (N.D .Okla. Oct. 28, 2008) (stating "supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1).") (citations omitted). Further, supplementation of an expert report pursuant to Rule 26(e) "does not cover failures of omission because the expert did an inadequate or incomplete preparation." *3M Innovative Props. Co. v. Dupont Dow Elastomers, LLC*, Civil No. 03-3364 (MJD/JGL), 2005 WL 6007042, at *4 (D.Minn. Aug. 29, 2005) quoting *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)). Thus, the undersigned

concludes that the Plaintiffs have improperly denominated Dr. Askari's May 30, 2012 submission as a supplemental report.[1]

However, the undersigned concludes that striking or excluding that submission is not an appropriate remedy at this juncture under the facts of this case. First, as stated above, the undersigned does not construe the May 30, 2012 disclosure as a supplemental expert report but rather as a notification. Second, to the extent that P&G seeks to exclude any portions of Dr. Askari's opinions referenced in that notification, although the P&G Defendants have already had to disclose their own expert witnesses and rebuttal witnesses, none of the depositions of the experts have occurred yet in this action, and thus P&G has not been deprived of the opportunity to either depose Dr. Askari on the basis of any of his opinions, including those that he might arrive at based upon the Fixodent Copper Blockade Study.[2] It is therefore difficult to conclude that P&G has suffered any significant prejudice based upon the Plaintiffs' submission of Dr. Askari's May 30, 2012 notice. Moreover, the Plaintiffs have not yet requested that the Court permit the introduction of the results of the Fixodent Study or Dr. Askari's opinion regarding that study, which may not have even been completed at this juncture. As such, the P&G Defendants' objection to such a request and/or to exclude any such evidence is premature. The undersigned notes that in this regard, the Defendants have not sought an extension of time to provide rebuttal witnesses and thus it is unclear what

---

[1] To the extent that Dr. Askari is describing his additional qualifications to render an opinion, a supplemental report would be appropriate; however, this is not the area which is the focus of this dispute.

[2] It is for this reason that the case at bar is distinguishable from Akeva *L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 308 (M.D.N.C. 2002) wherein the plaintiffs did not notify the defendants of the intent to "supplement" their expert's report with an additional test until after the close of discovery.

sanction or remedy, if any would be appropriate when and if the Plaintiffs seek to introduce such evidence.[3]  Finally, the undersigned offers no opinion on the ultimate admissibility of that study in this case, or the appropriate scope of Dr. Askari's testimony at trial, or at any hearing.

Thus based on the foregoing, the undersigned concludes that because Dr. Askari's May 30, 2012 submission is not an expert supplemental report, as it advances no opinions or conclusions, or otherwise corrects any errors from his initial April 30, 2012 Report, it will not be stricken.  In addition, the undersigned concludes that excluding all evidence related to the Fixodent Copper Blockade Study is premature at this time.

---

[3] The undersigned notes that Federal Rule of Civil Procedure 37 provides, *inter alia*, if a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information to supply evidence at a hearing or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1).  However, Rule 37 further provides, that instead of excluding the information as a sanction for the tardy disclosure, the court, on motion and after giving an opportunity to be heard:
(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

In addition, Courts examine the following factors in determining whether to exclude evidence pursuant to Rule 37(c)(1): "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Brincku v. National Gypsum Co.*, 2012 WL 1712620 *1 (M.D. Fla. May 15, 2012) citing *Vitola v. Paramount Automated Food Servs., Inc.*, No. 08–61849, 2009 WL 5067658 (S.D. Fla. Dec.17, 2009) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).  However, because the Plaintiffs have not sought to introduce any opinions based upon the Fixodent Copper Blockade Study into evidence in this action, the undersigned does not reach these factors or contemplate appropriate sanctions at this point.  When, and if, the Plaintiffs seek to rely on the Fixodent Study as a basis for Dr. Askari's opinions or to otherwise introduce the results of that study into a hearing or at trial, the Defendants may seek whatever relief Defendants deem appropriate pursuant to Rule 37, or any other applicable rule.

IV.     CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** Defendant Proctor & Gambles' Motion to Strike the May 30, 2012 Supplemental Report of Plaintiffs' Expert Dr. Frederick Askari (DE # 1831) is **DENIED**.

**DONE AND ORDERED** in chambers in Miami, Florida on August 23, 2012.

*Andrea M. Simonton*
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

**Copies furnished via CM/ECF to:**

**The Honorable Cecilia M. Altonaga**
    **United States District Judge**

**All counsel of record**