UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  09-2051-MD-ALTONAGA/SIMONTON

In re:

DENTURE CREAM PRODUCTS
LIABILITY LITIGATION,

_____/

ORDER ON PLAINTIFFS' MOTION
TO COMPEL THE PROCTOR AND GAMBLE DEFENDANTS
TO PRODUCE A FINAL PRIVILEGE LOG AND DOCUMENTS
IMPROPERLY DESIGNATED AS PRIVILEGED FOLLOWING
*IN CAMERA* REVIEW

Presently pending before the Court is Plaintiffs' Motion to Compel the Proctor &

Gamble Defendants to Produce a Final Privilege Log and Documents Improperly

Designated as Privileged Following *In Camera* Review (DE # 1582).  The Proctor &

Gamble Defendants ("P&G") have filed a Response to the Motion (DE # 1603), and the

Plaintiffs have filed a Reply (DE # 1624).  The Motion has been referred to the

undersigned Magistrate Judge (DE ## 611, 1048).  The Parties have also submitted

supplemental briefs on the issue (DE ## 1776, 1777-2, 1788).  In addition, the P&G

Defendants have submitted unredacted copies of twenty-eight "sample" disputed

documents to the undersigned for purposes of an *in camera* review and an ex parte

memorandum to support their privilege assertions.[1]

Based upon the arguments advanced by the Parties, the papers filed by the

Parties on this issue including the supplemental filings, and the documents submitted *in*

_____

[1] The Plaintiffs contend that there are twenty-nine "sample" documents at issue
that have been submitted to the Court for an in camera review (DE # 1776 at 1).
However, the P&G Defendants contend that there are only twenty-eight "sample"
documents that remain in dispute (DE # 1777-2 at 3).  The one document difference
appears to be because one of the previously disputed documents (Privilege Log Entry #
4809) has already been produced by the Defendants. *Id*.

*camera* to the undersigned, the undersigned concludes that the twenty-eight sample documents are protected by either the attorney-client privilege or the work product doctrine, or both, and thus are not subject to disclosure.

## I.   PROCEDURAL HISTORY

This Multi-District Litigation ("MDL") involves claims by consumers who purchased and used an over the counter denture cream manufactured and distributed by the P&G Defendants, which purportedly resulted in those consumers suffering the effects of zinc poisoning.  This Order is the second order issued by the undersigned regarding the Plaintiffs' Motion to Compel production of documents which the Plaintiffs contend were improperly designated by the P&G Defendants as either attorney-client privileged or as protected by the work-product doctrine. The first Order, issued after a hearing on the initial Motion to Compel, granted the Plaintiffs' Motion to Compel, in part, and directed the Defendants to review the approximately one-hundred documents identified by the Plaintiffs as "sample" documents and produce those documents that the Defendants conceded, if any, were not privileged (DE # 1747).[2]  In addition, the Defendants were directed to provide responses to the Plaintiffs' challenges and an updated privilege log for those remaining "sample" documents for which the Defendants still asserted a privilege.

In compliance with the Court's March 22, 2012 Order, after the P&G Defendants reviewed and supplemented certain disputed privilege log entries, and after the Parties met and conferred in an attempt to resolve the Plaintiffs' remaining challenges to those

---

[2] The Order also denied the Plaintiffs' request to have the Defendants review all of the privilege logs that had been previously produced on a rolling basis, and to produce one master privilege log (DE # 1747 at 4).

privilege logs, the Plaintiffs and the P&G Defendants filed supplemental memoranda of law setting forth their respective positions on the remaining disputed documents (DE ## 1776, 1777-2, 1788).  In addition, the P&G Defendants submitted unredacted copies of twenty-eight "sample" disputed documents to the undersigned for purposes of an *in camera* review.  In addition, as contemplated by this Court's March 22, 2012 Order, the P&G Defendants submitted an ex parte memorandum to support their privilege assertions wherein they set forth the details surrounding the creation of the disputed documents.

II.     THE POSITIONS OF THE PARTIES

A.     The Position of the Plaintiffs

In their Supplemental Memorandum of Law, the Plaintiffs state that after the Parties met and conferred, the P&G Defendants withdrew their claim of privilege for a number of documents, and similarly, the Plaintiffs withdrew their objections to other documents that had been designated as privileged by the Defendants.  The Plaintiffs further state that the Defendants provided the Plaintiffs with an updated privilege log which contained supplemental descriptive information for every single entry on the log where the privilege was not withdrawn.  Plaintiffs thus explain that, although 3800 documents still remain in dispute, the sample documents submitted to the Court for an *in camera* review are representative of the categories of privileged documents that the Plaintiffs maintain are incorrectly designated as privileged as set forth in the Plaintiffs' Initial Motion to Compel.  The Plaintiffs contend that they are entitled to obtain the documents in dispute because the attorney-client privilege and the work product doctrine as applied to those documents exceeds the scope of those protections.  In addition, the Plaintiffs contend that they are entitled to a revised privilege log because

the descriptions in P&G's log are insufficient for the Plaintiffs to glean any meaningful information.

Further, in their initial Motion to Compel, the Plaintiffs identified three categories of documents contained in the Defendants' privilege logs to which the Plaintiffs objected as follows:

Category A:   Documents in which no attorney was identified;

Category B:   Documents in which no attorney was identified but Defendants claim that the document reflects legal advice; and

Category C:   Documents that were authored by a non-attorney and disseminated to two non-attorneys, indicating that the document was primarily for business purposes.

(DE # 1582-2 at 8).  Thus, the Plaintiffs generally contend that the following categories of documents are improperly designated as privileged: 1) communications between P&G employees; 2) communications that contain business advice rather than legal advice; and, 3) communications created for purposes other than anticipated or pending litigation.

In addition, in their Supplemental Memorandum of Law in Support of Plaintiffs' Motion to Compel, the Plaintiffs again assert that P&G should be required to provide additional descriptive information in its privilege logs that Plaintiffs contend without which, they will not be able to ascertain the true nature of the privilege for purposes of challenging that designation (DE # 1776 at 2).

Also, in their Supplemental Memorandum of Law, the Plaintiffs contend that although P&G has provided supplemental descriptions of certain documents, the Plaintiffs still challenge some of those documents as primarily involving business advice

4

or as not being created for anticipated or pending litigation (DE # 1776 at 5-6).

Specifically, the Plaintiffs challenge certain documents as relating to labeling, safety

assessments, product information and product studies and FDA communications.

As to the substantive legal issues, the Plaintiffs contend that Florida's attorney-

client privilege standard as codified in Fla. Stat. § 90.502 applies to this action rather

than the Ohio attorney-client privilege standard, as suggested by the Defendants.

However, the Plaintiffs contend that under either state's attorney-client privilege law,

P&G should be required to produce a final, complete and more descriptive privilege log.

Finally, in the Supplemental Memorandum, the Plaintiffs contend that P&G's

interpretation of the requirement of identifying privileged documents pursuant to

Southern District of Florida Local Rule 26.1(g)(3)(c) is overbroad.  Specifically, the

Plaintiffs asset that the Defendants must include documents between the Defendants

and their counsel on their privilege log even if those documents were created after the

commencement of litigation and are related to that litigation, because those documents

have been listed on other privilege logs in other similar MDL actions.

### B.    The Position of the P&G Defendants

As stated above, the P&G Defendants have filed the Privilege Log of Sample 100

Documents (DE ## 1777-1, 1772-2) and a Memorandum of Law in Support of Filing

Privilege Log for Sample 100 Documents (DE # 1777-2).  In addition, the P&G Defendants

have submitted an ex parte Memorandum in Support of Privilege Assertions which

describes in greater detail the circumstances surrounding the creation of the sample

documents.  In the Memorandum filed with the Court, the Defendants have identified the

twenty-eight documents submitted for an in camera review as falling into four

categories, as follows:

1.      <u>2006 Pre-Litigation Documents</u>

This group of documents consists of emails created during 2006, prior to any litigation being initiated against P&G for zinc toxicity claims, but after a claim had been filed against the manufacturer of another denture adhesive.

According to the Defendants, these twelve sample documents (Privilege Log Entry Nos. 2175 through 2186) stem from a request by P&G in-house Counsel, Paul Franz, to P&G employees seeking certain product information so that Counsel could develop legal guidance and advice on anticipated claims related to the use of Fixodent.

2.      <u>Work Product and Attorney Advice Related to Product Labeling</u>

P&G asserts that this group of documents (Privilege Log Entry Nos. 991, 998, 983, 3447, 7284, 7110, 4836, 4802, 4797, 7107, 11419 and Pull Back Doc. No 1) primarily relate to legal advice and work product requests regarding the labeling of denture adhesive products.  P&G points out that it has not asserted that all labeling documents that involve counsel are privileged but instead has produced over 1500 documents either sent or received by three of its in-house counsel and over 11,000 related to labeling. Rather, P&G contends that it has only withheld documents related to labeling when those documents involved legal advice and/or work product communications related to litigation or anticipated litigation.

3.      <u>Attorney Advice Related to FDA Communications</u>

P&G contends that the one document in this category (Privilege Log Entry No. 4760) relates to handwritten notes taken by Greg Collier, Director of Product Safety and Regulatory Affairs for P&G, from a meeting with in-house counsel Matt Malloy, in

advance of a meeting with the FDA.[3]  The privilege log entry for this document describes

the document as "Correspondence with counsel and handwritten notes regarding

preparations and strategy for discussions with regulatory agency on litigation-related

Matters." (DE # 1776-3 at 3).  In addition, the supplemental information provided after the

Parties' October 5, 2011 meet and confer provided in the privilege log stated, "As

discussed with Attorney Falk in the meet and confer on 10/26, this document is Greg

Collier's handwritten notes from a strategy meeting with in-house legal counsel.  The

topic of meeting was to prepare for discussions with the FDA.  Handwritten notes from

meeting with legal counsel on top of an email previously produced to Plaintiffs

(874386)." *Id.*  In addition, in the materials submitted to the Court for an in camera

inspection, P&G explained in greater detail the handwritten notes on the email.

4.    Work Product Projects Related to Product Analysis and
      Adverse Events

P&G contends that the documents in this category (Privilege Log Entry Nos. 9367,

11175, 11176) relate to legal advice and work product projects involving product

analyses and adverse event reports.  P&G asserts that each of these documents was

prepared at the direction of counsel and in support of litigation defense efforts.  P&G

contends that pursuant to Federal Rule of Civil Procedure 26(b)(3), documents protected

by the work product doctrine need not be authored by an attorney but rather may be

protected if the document is created by a party's agent in anticipation of litigation.

In further support of their ex parte Memorandum, the Defendants have submitted

the affidavits of the following people: 1) Paul Franz, Esq., Vice President and Associate

---

[3] The Plaintiffs have identified one additional document as falling into the FDA
communications category, Privilege Log Entry No. 9435, which has not been submitted
for an in camera review.

7

General Counsel of the Procter & Gamble Company; 2) Lori Combs, Senior Scientist, Global Safety Surveillance at P&G; 3) Dr. Greg Collier, Director of Product Safety and Regulatory Affairs for Global Oral Care at P&G; 4) Sarah Vater, Ph.D., former Section Head in the Product Safety and Regulatory Affairs Department in the Oral Care Division with responsibility for the Fixodent Denture Cream North America business; 5) Donald L. Bjerke, Ph.D., Principal Scientist in the Product Safety & Regulatory Affairs Department in the Beauty Care Division of P&G since 2008, and former Principal Scientist in the Oral Care division of P&G; 6) Jacqueline M. Allshouse-Hutchens, Esq., an attorney in P&G's Legal Division; and, 7) Bladimir Ovando, Ph.D., Senior Scientist in the Product Safety & Regulatory Affairs Department in the Global Oral Care Division of P&G.  All of the affidavits and declarations recount the facts and circumstances surrounding the creation of the various documents and specifically address the privileged nature of each of the sample documents.

In addition, as to the substantive law, the P&G Defendants contend that the law of Ohio regarding attorney-client privilege rather than Florida law should govern the application of that privilege in this MDL action, and further contend that, unlike the Florida attorney-client privilege law, Ohio law does not require a "heightened scrutiny" analysis when the privilege is applied to corporate entities.

The P&G Defendants further contend that the Plaintiffs have failed to raise specific challenges to the Defendants' privilege log entries, but instead have only raised general categorical objections which flatly contradict the settled parameters of attorney-client and work product protections.  Similarly, the P&G Defendants contend that other of the general categorical objections incorrectly apply Florida law, and fail to sufficiently explain how the challenged documents are not protected by the work product and

8

attorney-client privilege, even after the P&G Defendants have provided detailed explanation of the privileged and protected nature of those documents.

Finally, the P&G Defendants contend that Rule 26.1(g)(3)(C) of the Local Rules for the Southern District of Florida clearly provides that "written and oral communications between a party and its counsel after commencement of the action and work product material created after the commencement of the action" need not be included on a privilege log.  Thus, the Defendants contend that any communications made with their counsel after the commencement of this action need not be included on the Defendants' privilege log.

III.    **LEGAL FRAMEWORK**

    A.    **Attorney-Client Privilege**

Florida Statute § 90.502, entitled "Lawyer-client privilege," provides in relevant part,

> (1) For purposes of this section:
>
> (a) A "lawyer" is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.
>
> (b) A "client" is any person, public officer, corporation, association, or other organization or entity, either public or private, who consults a lawyer with the purpose of obtaining legal services or who is rendered legal services by a lawyer.
>
> (c) A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:
>
> > 1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.
> >
> > 2. Those reasonably necessary for the transmission of the communication.

> (2) A client has a privilege to refuse to disclose, and to
> prevent any other person from disclosing, the contents of
> confidential communications when such other person
> learned of the communications because they were made in
> the rendition of legal services to the client.

Typically, in a diversity action, state law governs the scope of the attorney-client privilege.[4]  *See 1550 Brickell Assocs. v. Q.B.E. Ins. Co.*, 253 F.R.D. 697, 699 (S.D. Fla. 2008).  Pursuant to Florida law, "[a] communication between lawyer and client is 'confidential' if it is not intended to be disclosed to third persons." Fla. Stat. § 90.502(1)(c); *Cunningham v. Appel*, 831 So. 2d 214, 215 (Fla. Dist. Ct. App. 2002).  It is established that the attorney-client privilege applies to corporations. *In re Vioxx,* 501 F. Supp. 2d 789, 796 (E.D. La. 2007), citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981); *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970). The Florida Supreme Court has held that, unlike a claim of attorney-client privilege made by an individual, a claim of privilege raised by a corporation is subject to a "heightened level of scrutiny." *Southern Bell Tel. & Tel. Co. v. Deason*, 632 So.2d 1377, 1383 (Fla. 1994).  To establish that communications are protected by the attorney-client privilege, P&G, as coporate Defendants, therefore, must demonstrate that the documents satisfy the following

---

[4] Fed. R. Evid. 501, entitled "Privilege in General," provides:

The common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise:

• the United States Constitution;
• a federal statute; or
• rules prescribed by the Supreme Court.

But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

10

requirements:

> (1) the communication would not have been made but for the contemplation of legal service;
>
> (2) the employee making the communication did so at the direction of his or her corporate superior;
>
> (3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;
>
> (4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;
>
> (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Id.*[5]

---

[5]  As stated above, the Parties disagree as to whether Florida attorney-client privilege law or Ohio attorney-client privilege law is applicable to this action.  In Ohio, attorney-client privilege is established both by statute and at common law. The statutory privilege, R.C. 2317.02(A), is a testimonial privilege and provides generally that an attorney shall not testify "concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client." *See also, State ex rel. Leslie v. Ohio Housing Finance Agency*, 824 N.E. 2d 990, 994 (Ohio 2005). The common law privilege governs those areas not covered by statute. *Id.* At common law, communication is protected "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Id.* at 995 (quoting *Reed v. Baxter*, 134 F.3d 351, 355–356 (6th Cir. 1998)).

The P&G Defendants argue that the Plaintiffs have incorrectly asserted that Florida's attorney-client privilege law should apply to this MDL action, rather than Ohio attorney-client privilege law (DE ## 1603 at 6-8, 1777-2 at 3-8).  The Defendants contend that the Ohio attorney-client privilege law does not require the "heightened scrutiny" analysis required by Florida attorney-privilege law as applied to corporations (DE # 1777-2 at 6).  Therefore, the P&G Defendants request that this Court apply the Ohio attorney-client privilege standard rather than the Florida attorney-client privilege law.

Given the documents which have been submitted to this Court for review, it is not necessary to determine whether Ohio attorney-client privilege law rather than the Florida attorney-client privilege law should apply because, even assuming that the standards

11

In addition, the burden of proof rests squarely on the party claiming the attorney-client privilege to show that the primary purpose of the communication in question was for the purpose of obtaining legal advice, not business advice. *See*, *e.g.*, *Carpenter v. Mohawk Indus., Inc.*, No. 4:07-CV-0049-HLM, 2007 WL 5971741, at *9 (N.D. Ga. Oct. 1, 2007) ("When advice given by an attorney relates to both business and legal matters, the legal advice must predominate in order for the attorney-client privilege to apply."); *Hasty v. Lockheed Martin Corp.*, No. Civ. A. 98-1950, 1999 WL 600322, at *2 (E.D. La. Aug. 6, 1999) ("[T]he business aspects of [a corporate] decision are not protected simply because legal considerations are also involved;" and, "in those cases where the document does not contain sufficient information to indicate whether the material was considered confidential, that material should not be privileged.").  There is general agreement that the protection of the privilege applies only if the primary or predominant purpose of the attorney-client consultations is to seek legal advice or assistance. *In re Seroquel Products Liability Litigation*, No. 6:06-md-1769-ORL-22DAB, 2008 WL 1995058, at * 4 (M.D. Fla. May 7, 2008) *citing* 1 Paul R. Rice, Attorney-Client Privilege in the United States § 7:5.

---

differ under Florida and Ohio law, it is clear that the documents satisfy both standards to the extent that the attorney-client privilege has been asserted by the P&G Defendants. This determination is particularly inconsequential in this case where the Plaintiffs contend that "[t]he Florida and Ohio attorney-client privilege standards are essentially the same" (DE # 1776 at 6), and the Defendants contend that even under the "heightened standard" set forth in the Florida law, the documents at issue are protected by the attorney-client privilege, and further admit that the "substantive law [whether Florida or Ohio] may not impact whether any of the documents being reviewed in camera are privileged. . ." (DE # 1777-2 at 8).

B.    <u>Work Product Doctrine</u> [6]

The work product doctrine as set forth in Federal Rule of Civil Procedure 26(b)(3)

provides, *inter alia*,

> (b) Discovery Scope and Limits.
> . . . .
>
> (3) Trial Preparation: Materials.
>
> (A) Documents and Tangible Things. Ordinarily, a party may
> not discover documents and tangible things that are
> prepared in anticipation of litigation or for trial by or for
> another party or its representative (including the other party's
> attorney, consultant, surety, indemnitor, insurer, or agent).
> But, subject to Rule 26(b)(4), those materials may be
> discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the
> materials to prepare its case and cannot, without undue
> hardship, obtain their substantial equivalent by other means.
>
> (B) Protection Against Disclosure. If the court orders
> discovery of those materials, it must protect against
> disclosure of the mental impressions, conclusions, opinions,
> or legal theories of a party's attorney or other representative
> concerning the litigation.

Fed. R. Civ. P. 26(b)(3). Thus, pursuant to this rule, the work product doctrine protects

documents prepared in anticipation of litigation or for trial from discovery.  The rule

provides qualified protection to "documents and tangible things ... prepared in

anticipation of litigation or for trial" by or for a party, or by or for a party's representative.

Fed. R. Civ. P. 26(b)(3).  The work product doctrine also protects oral expressions of an

attorney's mental impressions, legal theories and subjective evaluations. *Lott v.*

*Seaboard Sys. R.R., Inc.*, 109 F.R.D. 554, 557-58 (S.D. Ga. 1985).  However, the work

---

[6] The Parties agree that the federal work product doctrine applies to this action.

13

product doctrine does not protect facts contained in documents prepared in anticipation of litigation. *See United States v. Pepper's Steel & Alloy, Inc.*, 132 F.R.D. 695, 698 (S.D. Fla. 1990).

In addition, in order for the doctrine to apply, a party must anticipate litigation at the time the documents were drafted. *CSK Transp., Inc. v. Admiral Ins. Co.*, No. 930132-CIV-J-10, 1995 WL 855421, at *2 (M.D. Fla. July 20, 1995).  Thus, documents drafted in the ordinary course of business are not protected.  *Id.*  Accordingly, in assessing whether the work product doctrine is applicable to a particular document, a court must determine when the document was created, and why it was created. *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 698 (S.D. Fla. 2007) (citations and quotations omitted); *Moye, O'Brien, O'Rourke, Hogan & Pickert v. National R.R. Passenger Corp.*, No. 6:02-CV-126-ORL-KRS, 2003 WL 21146674, *14 (M.D.Fla. May 13, 2003) ("The testing question for the work product privilege, ... is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.") (internal quotations omitted).

Finally, like the attorney-client privilege, the party asserting that a document or information is protected work product has the burden of establishing that the document was prepared or information was provided both (1) in anticipation of litigation and (2) by the party or by a representative of the party. Fed. R. Civ. P. 26(b)(3); *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985); *Federal Deposit Ins. Corp. v. Cherry, Bekaert & Holland*, 131 F.R.D. 596, 600 (M.D. Fla. 1990).

### C.  Local Rule 26.1 (g)

Southern District of Florida Local R. 26.1 (g), which governs the method for

14

asserting a privilege, provides, in relevant part,

> (g) Interrogatories and Production Requests.
>
> . . .
>
> (B) Where a claim of privilege is asserted in objecting to any interrogatory or production demand, or sub-part thereof, and an answer is not provided on the basis of such assertion:
>
> (i) The attorney asserting the privilege shall in the objection to the interrogatory or document demand, or subpart thereof, identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked;
>
> . . . .
>
> (C) This rule requires preparation of a privilege log with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege or work product protection except the following: written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action.

Thus, *inter alia*, pursuant to this rule, although a litigant must provide the grounds for the asserted privilege as in a privilege log, a litigant need not identify on that privilege log those communications between a litigant and its counsel after the commencement of an action.

   IV.   **ANALYSIS**

      A.    **Timeliness of Plaintiffs' Objections**

      As an initial matter, to the extent that the timeliness of the Plaintiffs' objections to the Defendants' privilege logs was not resolved in the first hearing on the Motion to Compel and the Order entered memorializing the rulings made at that hearing (DE # 1747), the undersigned briefly addresses that issue.  The P&G Defendants contend that

the Plaintiffs should have raised their objections to the "rolling privilege logs" provided by the Defendants within thirty days of the production of each of those logs as required by Local Rule 26.1(h)(1), of the Local Rules for the Southern District of Florida.  In addition, the Defendants contend that the Plaintiffs' Motion to Compel was also untimely.

Based upon a review of the chronology of the discovery process in this matter, the undersigned concludes that the Plaintiffs' objections to the Defendants' privilege logs were timely raised.  Specifically, Case Management Order No. 3 issued in this case, which set forth the requirement that the parties produce privilege logs within ninety (90) days after an initial or subsequent production of documents, was silent as to when objections to those privilege logs needed to be raised (DE # 89 at 12).  However, it is undisputed that after the Defendants had responded to a number of the Plaintiffs' document requests and provided privilege logs related to those productions, the Court set a deadline of September 15, 2011 for the Plaintiffs to raise objections to the Defendants' privilege logs (DE # 1405 at 1).  By all accounts, the Plaintiffs did raise objections as to those privilege logs previously produced by the P&G Defendants on or before that deadline (DE # 1603 at 3).[7]  In addition, the undersigned finds merit in the Plaintiffs' contention that, because the Defendants did not produce a privilege log covering their entire production until December 6, 2011, the Plaintiffs' Motion to Compel

---

[7]  In this regard, the undersigned notes that the Order setting the deadline date for the Plaintiffs' response to the privilege logs was entered by the Court after the Parties submitted their respective proposed scheduling orders (DE ## 1379-1, 1379-32), wherein the Plaintiffs addressed the issue of responding to the Defendants' privilege logs by, among other things, proposing the September 15, 2011 deadline date.  The Defendants' written proposed scheduling order was silent as to the time for the Plaintiffs to respond to the Defendants' privilege logs (DE ## 1379-1, 1379-2 at 6 n 5).

a Final Privilege Log, which was filed within thirty days of that date, was timely under the applicable rules (DE # 1582-2 at 17).

Finally, given the complex nature of this MDL litigation, including the fact that the Defendants have produced close to fifty (50) privilege logs, and the Parties have continually engaged in conferences regarding the production of documents including those documents withheld on the basis of privilege, the undersigned concludes that it is appropriate to entertain the Plaintiffs' objections to the documents withheld by the P&G Defendants on the basis of attorney-client privilege and the work product doctrine.[8]

**B.**     **Sufficiency of the Descriptions of Entries Contained in the Defendants' Privilege Logs**

In the Motion to Compel, the Plaintiffs have requested that P&G be required to provide additional descriptions of the documents listed in the various privilege logs. Typically, a privilege log should identify each document and the individuals who were parties to the communications with sufficient detail to permit the compelling party or court to determine if the privilege is properly claimed. *Arthrex, Inc., v. Parcus Medical, LLC,* No. 2:11-CV-694-FTM-29SPC, 2012 WL 3778981 at *4 (M.D. Fla. Aug. 31, 2012), citing *CSX Transportation, Inc., v. Admiral Insurance Co.*, No. 93-132-CIV-J-10, 1995 WL 855421, at *3 (M.D. Fla. July 20, 1995).  Thus, a proper privilege log should contain the following information:

(1) the name and job title or capacity of the author of the

---

[8] The undersigned notes that implicit in the Court's earlier Order on the Motion to Compel issued on March 22, 2012, (DE # 1747) was the fact that the Court deemed the Plaintiffs' objections to the Defendants' privilege logs as timely.  Consistent with that determination, the Parties did not reassert their arguments related to the timeliness of the Plaintiffs' objections in their respective Supplemental Memoranda of Law filed in conjunction with the sample documents submitted for the Court's *in camera* review.  In addition, neither Party objected to the undersigned's earlier Order.

17

document;

(2) the name and job title or capacity of each recipient of the document;

(3) the date the document was prepared and if different, the date(s) on which it was sent to or shared with persons other than the author(s);

(4) the title and description of the document;

(5) the subject matter addressed in the document;

(6) the purpose(s) for which it was prepared or communicated; and

(7) the specific basis for the claim that it is privileged.

*Roger Kennedy Construction, Inc. v. Amerisure Insurance Co.*, No. 6:06-C-1075-ORL-19KRS, 2007 WL 1362746, at *1 (M.D. Fla. May 7, 2007) (detailing the information needed in a proper privilege log).

The undersigned has reviewed the descriptions in the privilege log of the sample documents submitted for an *in camera* review and concludes that the descriptions currently in that log, which were supplemented after a meet and confer held in October of 2011, and again after a meet and confer held in March of 2012, are sufficient to place the Plaintiffs on notice of the nature of the asserted privilege, and thus do not need to be supplemented.  By way of example, Privilege Log Entry No. 11175, which Plaintiffs cite as an example of a deficient privilege log description, is an email dated June 3, 2011, which initially was described as, "Correspondence from P&G employee to P&G employee regarding searches for Fixodent information and data and compiling same at the request of counsel for purposes of litigation." (DE # 1776 at 3).  The Privilege Log entry for this document also identified the date of the email, the person who created the email, and the person to whom the email was sent.  This entry was supplemented by the

18

P&G Defendants on March 22, 2012, to include the following information:

> This email is from one P&G employee to another P&G
> employee sending an attachment which contains Fixodent
> consumer information asked to be compiled at the request of
> counsel for purposes of preparing a defense for the litigation.
> The law clearly holds that compiled or prepared information
> at the request of counsel, even though performed by
> company employees, are entitled to work product
> protections.  This is squarely a case of this exact scenario as
> the information was prepared for the defense of the Fioxdent
> litigation where there were allegations of zinc toxicity and
> consumer claims reported to P&G are at issue in this
> litigation.

(DE # 1776 at 3).  Even with this supplemental information, the Plaintiffs contend that

this description is insufficient because it is conclusory with no legal, factual or

evidentiary support for P&G's assertion that the email is entitled to work product

protection.  The undersigned concludes, for the following reasons, that the Plaintiffs'

contentions are without merit.

First, the Plaintiffs have not specifically stated that the Defendants' privilege log

fails to adequately identify the dates, authors or recipients of the entries on the log.  In

this regard, the undersigned notes that Case Management Order No. 3 also set forth the

requirements of the privilege log including requiring that the log, consistent with Fed. R.

Civ. P. 26(b)(5), include; (a) Custodian or source; (b) Date; (c) From/author(s)-to the

extent available: (d) Recipient(s) (For email and hard-copy communications such as

letter and internal memoranda)(including copies and blind copies); (e) Identifications of

the privilege claimed; and (f) Description of the document and basis for the privilege

claim. (DE # 89 at 12-13).  The Plaintiffs have not identified which parts of Case

Management Order No. 3 the Defendants specifically failed to comply with, other than

asserting that the descriptions of the documents are insufficient.  Second, it is hard to

fathom how the descriptions from the privilege log set forth above are insufficient to place the Plaintiffs on notice as to the basis of the Defendants' asserted privilege and whether the Plaintiffs had a basis for objecting to that assertion.  Other than specifically stating the exact contents of the withheld documents, the undersigned is unclear what other information the Plaintiffs contend that the Defendants' should have divulged.  In this regard, the undersigned concludes that even the descriptions of the sample documents that were supplemented after the October 2011 meet and confer were sufficient to satisfy the privilege log disclosure requirements.  The additional information added to those entries after the March 2012 meet and confer exceeds what is typically required to be provided in a privilege log.  While the Court understands the Plaintiffs' desire to have additional information regarding the contents of the documents withheld by the Defendants, requiring a fully detailed description of the withheld document would, in essence, eviscerate the purpose of the privilege rule.

In this regard, it is worth noting that the purpose of the March 2012 meet and confer, held after the hearing on the initial Motion to Compel, was for the Parties to attempt to resolve disputes regarding the then-approximately 100 sample documents over which P&G asserted a privilege, which resulted in P&G withdrawing some assertions as to those sample documents.  The goal of collecting sample documents was to determine whether privileges had been properly or improperly claimed and for the Parties to apply those rulings to the remaining documents, without the need for further court review.  Where P&G agreed to withdraw its assertion of privilege during the meet and confer process regarding the sample documents, there was no need for a court ruling.  Nonetheless, even though there was no court ruling regarding the applicability of the privilege, the undersigned assumes that, consistent with the purpose

of the sample review process, P&G has withdrawn any similar claims of privilege with respect to the 3800 documents originally challenged, and has produced any similar documents.[9]

In addition, it is for this same reason that P&G need not provide supplemental descriptions for the remaining approximately 3800 documents identified in its privilege logs.  The purpose of requiring P&G to provide more detailed descriptions of the sample documents after the March 2012 meet and confer was so that the Plaintiffs could raise meaningful challenges to the assertions of privilege for those documents.  Thus, requiring P&G to provide additional descriptive information for documents similar to the sample documents would be a futile task, because, as discussed fully below, the undersigned has concluded that P&G's assertions of attorney-client privilege and/or work product protection for the sample documents submitted to the Court, in camera, were entirely proper.  In other words, if P&G supplemented its descriptions for the remaining documents in its privilege logs, which are similar to the sample documents that were submitted for an in camera review, the Court would likely find that those documents were also protected from disclosure, and thus the task of providing supplemental descriptions would serve no purpose.  Indeed, it is presumably for this reason that the Plaintiffs requested that the Court conduct an in camera review of sample documents in the first place.  Accordingly, the P&G Defendants need not supplement the descriptions of documents contained in their privilege logs.

---

[9]  If such documents have not been produced, P&G must produce them within 30 days from the date of this Order.

C.   **Analysis of Sample Document Categories**

1.   **Plaintiffs' General Objections**[10]

As stated above, the Plaintiffs initially contended that certain documents withheld by the Defendants were not subject to protection from disclosure because the privilege log descriptions for those documents did not reflect that an attorney either authored or received the specific correspondence or document being withheld (DE # 1582-2 at 8). Specifically, the Plaintiffs identified certain documents as falling within the following categories for support of their contention that the documents should have been produced:

Category A:   Documents in which no attorney was identified;

Category B:   Documents in which no attorney was identified but Defendants claim that the document reflects legal advice; and

Category C:   Documents that were authored by a non-attorney and disseminated to two non-attorneys, indicating that the document was primarily for business purposes.

However, despite the Plaintiffs' categorization of the documents withheld by the Defendants, it is clear that pursuant to the relevant case law, the determination of whether a document is protected by the attorney-client privilege or the work product doctrine does not turn solely on whether a particular document reflects that an attorney and/or certain corporate management employees either authored or received the document in dispute.

_____

[10] Although the Plaintiffs have identified the Defendants' withheld documents as falling into either categories A, B or C based upon the authors and/or recipients of certain documents, because in response to the Motion to Compel the Defendants have asserted the attorney-client privilege and/or work product protection based upon the substantive content of the documents, the undersigned analyzes the documents by the substantive categories identified by the Defendants in the following portions of this Order.

Indeed, by way of background, in *Southern Bell Telephone and Telegraph, Co. v. Deason*, 673 So. 2d 1377 (Fla. 1994), the Florida Supreme Court rejected the "control-group test" in favor of the "subject matter test" in determining whether certain communications between non-upper echelon employees were protected from disclosure. While the control group test limited the application of the attorney-client privilege to those communications between the attorney and members of the corporation who are "in a position to control or even to take a substantial part in a decision about action which the corporation may take upon the advice of the attorney," the "subject matter test" extended the zone of attorney-client privilege to other corporate employees under certain circumstances. *Southern Bell*, 632 So.2d 1377 at 1381 (citing *City of Philadelphia v. Westinghouse Elec. Corp.*, 210 F.Supp. 483 (E.D. Pa. 1962)). Specifically, the Florida Supreme Court acknowledged that middle and lower-level employees frequently play a crucial role in a corporation's activities and thus an attorney representing a corporation may be charged with gathering the facts from employees with information relevant to the corporations' legal problem regardless of their rank. Thus, although *Deason* dealt with communications between counsel and various corporate employees, the Court in that case, in essence, acknowledged the realities of other lower level employees in facilitating the dissemination of legal advice to the corporation which may extend the scope of the attorney-client privilege.

Consistent with this principle, in *Tyne v. Time Warner Entm't Co., L.P.*, 212 F.R.D. 596 (M.D. Fla. 2002), the Court applied the *Deason* subject matter test to determine whether certain correspondence between non-attorneys sought from a corporation during discovery was protected under Florida's attorney-client privilege. The plaintiff in the matter asserted that certain documents were not protected by the attorney-client

privilege because the documents were authored by a non-attorney employee who was not an agent of the legal department, and who distributed the information to other non-attorney individuals who also were not in the corporation's legal department.  The court rejected this position and concluded that, because the non-attorney who authored the documents disseminated legal advice from the legal department to key individuals who were tasked with acting on the advice, the communications were, in fact, protected by Florida's attorney-client privilege.  *Id.* at 600-01.  The court's conclusion on this issue was supported by the statements of the head of the corporation's legal department who testified that the non-attorney, who authored the disputed documents, had direct, daily contact with him, and regularly consulted with attorneys on issues before passing the information on to other non-legal employees.  *Id.*

Similarly, in *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684 (S.D. Fla. 2009), the undersigned concluded that certain emails were protected by the Florida attorney-client privilege despite the fact that the emails were sent between two employees. *Id.* at 696.  In so doing, the undersigned stated,

> [T]he [ ] Email-in both its redacted and unredacted form-is protected by the attorney-client privilege. The fact that [the Plaintiff] redacted portions of the document consisting of direct communications to and from [the litigant's] attorneys is not the dispositive factor where, as here, the unredacted portions of the document comprise communications among the corporation's employees intended to disseminate the legal advice provided by counsel and discussing the ramifications of that legal advice. See *Weeks v. Samsung Heavy Indus. Co.*, No. 93-C-4899, 1996 WL 341537, at *4 (N.D.Ill. June 20, 1996) ("A privileged communication does not lose its status as such when an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation. Management personnel should be able to discuss the legal advice rendered to them as agents of the corporation.") (internal citations omitted).

Thus, although the Plaintiffs in this case are generally correct that courts have denied corporate entities from withholding documents on the basis of attorney-client privilege where those entities' legal departments have broad powers and the corporation "simultaneously sends communications to both lawyers and non-lawyers", see, e.g., *In re Vioxx Products Liability Litigation*, 501 F. Supp. 2d 789, 805 (E.D. La. 2007); *In re Seroquel Prods. Liability Litig.*, No. 6:06-md-1769-Orl-22DAB, 2008 WL 1995058, at *4 (M.D. Fla. May 7, 2008), as evidenced by the holdings in *Tyne* and *Preferred Care Partners*, this blanket rule does not apply to all documents or communications between non-legal employees in the corporate setting.  Rather, as stated in *Vioxx*,

> The fictitious legal entity is the client that cannot speak, but that entity is personified by the employees who represent its interests and speak on its behalf. Consequently, it protects communications between those employees and corporate legal counsel on matters within the scope of their corporate responsibilities, as well as communications between corporate employees in which prior advice received is being transmitted to those who have a need to know in the scope of their corporate responsibilities.

 *In re Vioxx,* 501 F. Supp. 2d 789, 796 (E.D. La. 2007).   In addition, as stated in *U.S. v. Lockheed Martin Corp.*, 995 F. Supp. 1460, 1464 (M.D. Fla. 1988), "The Supreme Court [has] established that privileged communications are not limited to those in control of the corporation. When executives who will act on legal advice direct lower level employees to provide information to counsel, those communications (though not the underlying information) may qualify for the privilege." *Id.*, citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981).

Similarly, simply because a communication is made between two corporate employees, neither of whom are attorneys, that fact is not determinative of whether that communication primarily involves business advice rather than legal advice for purposes

of applying the attorney-client privilege to that correspondence.  To conclude otherwise would result in a somewhat absurd finding that a document generated for purposes of obtaining and/or assisting in the transmission of legal advice would not only lose its privileged character, but would be artificially viewed as primarily a business communication merely because the author and recipient were not attorneys.  Thus, the Plaintiffs' contention that the absence of an attorney on a particular correspondence or document renders that document discoverable as it cannot satisfy the "legal advice or services" requirement of Florida's attorney-client privilege law, is without merit.[11]

Therefore, the undersigned declines to adopt the Plaintiffs' wholesale approach to concluding that certain documents withheld by the P&G Defendants are not privileged based solely upon the fact that the particular document did not reference an attorney, was authored by a non-attorney and/or was disseminated by two non-attorneys.  Rather, the undersigned must examine the documents and the circumstances surrounding the creation of those documents on an individual basis to ascertain whether they are entitled to attorney-client protection.

This same analysis applies equally to those documents withheld on the basis of the work product doctrine.  As stated in *Lafarge North America, Inc. v. Matraco-Colorado, Inc.*, No. 07-80112-CIV, 2008 WL 2474638 at * 5 (S.D. Fla. June 19, 2008), "[I]n addition to the attorney-client privilege, protection is afforded to attorney work product. Materials prepared by a party's representative, including his or her designated agent, to

---

[11] The undersigned acknowledges that the Plaintiffs are without the benefit of viewing the actual withheld documents, or the Defendants' ex parte submissions, including affidavits and declarations, that provide greater detail about the documents at issue, and thus are unable to precisely describe the reasons that the privilege may not be applicable.

aid in anticipated or pending litigation will be protected from disclosure unless the party

seeking discovery shows substantial need for the materials and cannot acquire a

substantial equivalent without undue hardship." *Id.* citing *Hickman v. Taylor*, 329 U.S.

495, 511 (1947); Fed. R. Civ. P. 26(b)(3)(A).  Thus, the work product doctrine, as

interpreted in case law, and explicitly set forth in Fed. R. Civ. P. 26 (b)(3), does not

require that the withheld document be prepared by an attorney, or even reviewed by an

attorney.

  In addition, litigation need not be already initiated in order for the work product

doctrine to apply.  In *Tyne*, for example, the Court concluded that to the extent that the

undisclosed documents were not protected by the Florida attorney-client privilege, they

could be protected by the work product doctrine.  In reaching this conclusion, the Court

stated,

> Finally, even if the documents were not protected from
> discovery by the attorney-client privilege, they may be
> protected by the work product doctrine. While many of the
> documents are created and circulated with the purpose of
> avoiding litigation, some documents indicate that specific
> litigation had been overtly threatened. Many, if not all, of the
> documents are protected by the work product doctrine
> because they were developed in order to avoid, and
> eventually to defend against, threatened or anticipated
> litigation. The production companies accurately anticipate
> that they may be sued for misuse of certain material in their
> films. The legal department analyzes the legal risks of
> including such material in the film, and either obtains what it
> believes to be adequate clearance, or recommends that the
> studio not include the material in the film. The work product
> associated with this process is produced in anticipation of
> litigation, and is protected from discovery. Plaintiffs have
> failed to demonstrate need and undue hardship in order to
> overcome that protection.

*Id.* at 601.  It is significant that the Court focused on whether the work performed was in

anticipation of litigation, even if no litigation was ultimately commenced on the particular

issue.

Therefore, the Plaintiffs' contention that certain of the documents are not protected by the work product doctrine because they were not authored or received by an attorney, standing alone, is insufficient to demonstrate that no protection applies to those documents.  Rather, as set forth below, the undersigned has conducted a document by document review of each of the sample documents, including examining the circumstances surrounding the creation of a particular document, to ascertain whether the particular document is attorney-client privileged or entitled to work product protection.  Based thereon, the undersigned concludes, for the following reasons, that each of the documents are protected from disclosure by either attorney-client privilege or the work product doctrine, or both.

2.      Specific Documents

a.      2006 Pre-Litigation Documents

As stated above, the Defendants describe these sample documents (Privilege Log Entry Nos. 2175 through 2186) as consisting of emails created during 2006, prior to any litigation being initiated against P&G for zinc toxicity claims, but after a claim had been filed against the manufacturer of another denture adhesive.  Specifically, according to the Defendants, these twelve sample documents stem from a request by P&G in-house Counsel, Paul Franz, Esq., to P&G employees seeking certain product information so that Counsel could develop legal guidance and dispense advice on anticipated claims related to P&G's products.  In support of this contention, the Defendants have submitted, ex parte, the affidavit of Paul Franz, Esq., P&G Vice President and Associate General Counsel, which sets forth the circumstances surrounding the creation of the withheld documents.  The Plaintiffs generally objected to these documents being

28

withheld because either no attorney was identified (Category A) or the document was authored by a non-attorney author and there were at least two non-attorney recipients (Category C).

   After a thorough review of the documents submitted by the Defendants, including the Affidavit of Mr. Franz, and consistent with the analysis set forth above in *Tyne* and *Preferred Care Partners*, the undersigned concludes that all of the documents listed in this category (Privilege Log Entry Nos. 2175-2186) are protected from disclosure as they either satisfy the requirements of the Florida attorney-client privilege as applied to corporations, or are documents prepared in anticipation of litigation as required by the work product doctrine, or both. To the extent that the Plaintiffs objected to the documents as being subject to disclosure because they were either authored by, or received by, non-attorney or non-legal personnel, the Defendants' ex parte submissions sufficiently rebut this assertion.  In particular, almost all of the persons identified on the documents as either the author or one of the recipients were either attorneys, Directors at P&G of departments relevant to the legal subjects at issue, or persons who would have access to information necessary to Mr. Franz's information gathering task.[12]  Thus,

_____

   [12] The Affidavits and Declarations submitted ex parte by the P&G Defendants establish the following: Paul Franz, Esq., is the Vice President and Associate General Counsel of P&G; Dr. Ron Stout was the Associate Director of Global Safety Surveillance of P&G during the relevant time frame; Jack Amburgey worked in P&G's Product Safety and Regulatory Affairs Department; Lori Combs was a Senior Scientist in the Global Safety Surveillance department at P&G; Holly Cheers was a Senior Scientist in Global Safety Surveillance & Analysis at P&G; William Greg Collier, Ph.D. was the Director of Product Safety and Regulatory Affairs for Global Oral Care at P&G and also previously was the Associate Director of that department; Sally Vater, Ph.D. was the Section Head in the Product Safety and Regulatory Affairs Department in the Oral Care Division; Michael Achampong was the Regulatory Manager for Fixodent at P&G and reported to Sally Vater; Mark Griffiths was the Regulatory Section Head for European Fixodent business; Donald L. Bjerke, Ph.D. was the Principal Scientist in the Product Safety & Regulatory Affairs Department in the Beauty Care Division at P&G and formerly was a

this is not a case where otherwise protected documents were distributed widely to persons who did not need to be informed of the legal advice disseminated by P&G's counsel.[13]

  **b.**  **Work Product and Attorney Advice Related to Product Labeling**

  The Defendants contend that this group of documents (Privilege Log Entry Nos. 991, 998, 983, 3447, 7284, 7110, 4836, 4802, 4797, 7107, 11419 and Pull Back Doc. No 1) primarily involve legal advice and work product requests relating to the labeling of denture adhesive products.[14]  In support of this contention, the P&G Defendants point

――――――――――――――――

Principal Scientist in the Oral Care division; Bladimar Ovando, Ph.D is the current Fixodent toxicologist; Jeff King was the Fixodent Brand Manager; Dr. Dave Mitchell was the Section Head of Central Product Safety; and Jacqueline Allshouse-Hutchens and Matt Malloy were in-house Counsel for P&G.  In addition, Counsel for P&G has identified Keith Triebwasser as the Director in the Global Product Safety and Regulatory Affairs Department.

  [13]  The undersigned notes that the Plaintiffs have not contended that they are unable to obtain the documents without significant hardship, and thus, for purposes of resolving the instant dispute, it is inconsequential whether the documents are protected from disclosure by the attorney-client privilege or the work product doctrine, or both.

  [14] It is unclear whether the Plaintiffs still object to the "pull back" document on the basis that the Defendants waived any objection to the disclosure of this document by failing to raise the objection earlier.  At any rate, it doesn't appear the privilege was waived.  Although the Court applies the substantive law of the State when evaluating attorney-client privilege, Federal Rule 502 provides:

When made in a Federal proceeding . . ., the disclosure [of a communication or information covered by the attorney-client privilege] does not operate as a waiver in a Federal or State proceeding if:

  (1) the disclosure is inadvertent;

  (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and

  (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

out that they have not asserted that all labeling documents that involve counsel are privileged but instead have produced over 1500 documents either sent or received by three of P&G's in-house counsel and over 11,000 documents related to labeling.  Rather, the P&G Defendants contend that they have only withheld documents related to labeling when those documents involved legal advice and/or work product.  Generally, the undersigned finds that these documents are protected by the attorney-client privilege and the work product doctrine based, in large part, upon the statements contained in the Affidavit of Paul Franz, Esq., Vice President and Associate General Counsel of P&G, which were submitted on an ex parte basis to the Court.

As to Privilege Entry Nos. 991, 998, 983 and Pull Back Doc. No 1 specifically, the Defendants have provided the undersigned with several other privileged emails, that have not been challenged by the Plaintiffs, which provide additional context for the redacted emails which are currently at issue.  Based upon a thorough review of those documents, and the Affidavits of Paul Franz, Esq., and Donald Bjerke, Ph.D., as well as the Declaration of Greg Collier, the undersigned concludes that Privilege Log Entry Nos. 991, 998, 983 and Pull Back Doc. No. 1 are protected by the attorney-client privilege and work product doctrine, despite the fact that labeling is mentioned in those documents. Specifically, it is clear that the documents are not concerned with business and/or marketing decisions related to labeling but clearly pertain to legal concerns including

---

Fed. R. Evid. 502(b).  Thus, it appears in this case, that the Defendants inadvertently disclosed this document and attempted to rectify this error, thereby satisfying the requirements of Rule 502(b).  Accordingly, the P&G Defendants are permitted to withhold Pull Back Doc. No. 1, on the basis of the asserted privileges.

potential litigation.[15]  As such, the documents may be properly withheld by the

Defendants.

In addition, Privilege Log Entries Nos. 7284 and 7110 are documents pertaining  to

Julie Aker, President and CEO of Concentrics Research, LLC, related to litigation

strategy, who was contacted as a consulting litigation expert by Jacqueline Allshouse-

Hutchens, Esq., an attorney in the Legal Department of P&G.  The information regarding

the privilege was included in the Defendants' Privilege Log after the meet and confer

held on October 5, 2011 (DE # 1776-1).  Specifically, Privilege Log Entry No. 7110

provides,

> This document contains handwritten notes of Sally Vater
> reflecting her discussions with in-house legal counsel,
> Jacqueline Allshousehutchens, regarding counsel's
> consultation with a human factors litigation consultant (Julie
> Aker) on the Fixodent denture adhesive label.  As more fully
> explained in Ms. Allshousehutchens' affidavit previously
> provided to Plaintiffs' counsel in this litigation, Ms.
> Allshousehutchens' consultation with Ms. Aker was
> undertaken by counsel for the purpose of seeking
> information to assist her in advising the company in
> pending/anticipated litigation.

(DE # 1776-1 at 5).  Based upon a review of this document, as well as Privilege Log Entry

No. 7284, and the Affidavit of Jacqueline Allshouse-Hutchens, Esq., submitted in support

---

[15] The persons who were in receipt of these documents also generally fall into the
category of persons identified in the pre-2006 communications, in that they are either
Counsel for P&G, directors at P&G in departments relevant to the legal issues at hand,
or persons whose knowledge of the legal issue or task related to the issue is necessary
for completion of that task.   It is also worth noting that none of the documents
submitted for in camera review rely exclusively on the attorney-client privilege for their
protection, but all of the documents list the work product doctrine, as well.  Thus, to the
extent that the Plaintiffs contend that the P&G Defendants have failed to satisfy the
Florida attorney-client privilege because of dissemination of the withheld documents
beyond those persons who, because of the corporate structure, need to know their
contents, that argument fails because the documents are protected by the work product
doctrine.

of the Defendants' contention that this document is protected from disclosure, the undersigned agrees that both documents are protected by the work product doctrine.

The Defendants have provided the unredacted form of Privilege Entry No. 3447, which includes references to labeling but specifically refers to litigation and expresses impressions from P&G's counsel, and thus is protected from disclosure, under the attorney work product doctrine. This conclusion is supported by the Affidavit of Donald L. Bjerke, Ph.D., a principal scientist in the Product Safety and Regulatory Affairs Department in the Beauty Care Division at P&G, which has been submitted to the undersigned on an ex parte basis. Dr. Bjerke's Affidavit makes clear that the email in question was generated as part of his completion of a task for the P&G legal department related to litigation. Thus, although the Plaintiffs are correct when they state that "non-attorney impressions are not protected work product," (DE # 1624 at 8), the carrying out of tasks at the behest of legal counsel, or the summarization of legal advice, even if done by a non-attorney for purposes of disseminating that advice to other corporate employees is clearly protected, as is the case of the document authored by Dr. Bjerke.

As to Privilege Log Entry Nos. 4836, 4802, 4797, and 7107, all of which were created after litigation was initiated in this action, these documents, although containing references to labels, primarily involve legal considerations regarding labeling relating to pending and/or anticipated products liability litigation matters, and thus are protected by the work product doctrine. This conclusion is reached in part based upon the Declaration of Greg Collier, Director of Product Safety and Regulatory Affairs for Global Oral Care at P&G, and the Affidavits of Jacqueline Allshouse-Hutchens, Esq., and Sarah Vater, Ph.D., all of which provide the factual context for which these documents were created. The unredacted documents have also been provided to the undersigned and

confirm that Privilege Entry Nos. 4836 and 4802 are protected by the Florida attorney-client privilege as they involve communications from a P&G corporate division director directed to its counsel soliciting legal advice.

Further, Privilege Entry No. 11419, which refers to labeling issues, is protected by the work product doctrine as it was generated in anticipation and consideration of litigation.  This conclusion is reached in part based upon the Affidavit of Sarah Vater, Ph.D, the former Section Head of Product Safety and Regulatory Affairs Department in the Oral Care Division which was submitted ex parte to the Court.

In sum, the materials submitted to the undersigned in this category relate to strategies and concerns about litigation which are affected by the labels affixed upon the products at issue and include suggestions by counsel regarding that labeling.  Thus, the documents withheld by the Defendants are not akin to those regulatory labeling documents at issue in the cases of Vioxx and Seroquel which are cited by the Plaintiffs and discussed below, but rather are specifically related to the litigation strategy and/or primarily seek or complete a task related to legal advice.  As such, the documents are protected from disclosure.

c.    <u>Attorney Advice Related to FDA Communications</u>

P&G contends that the one document in this category (Privilege Log Entry No. 4760) relates to handwritten notes taken by Greg Collier, Director of Product Safety and Regulatory Affairs at P&G, during a meeting with in-house counsel Matt Malloy, in advance of a meeting with the FDA.[16]  The privilege log entry for this document

---

[16] The Plaintiffs have identified one additional document as falling into the FDA communications category, Privilege Log Entry No. 9435, which has not been submitted for an in camera review.

describes the document as "Correspondence with counsel and handwritten notes regarding preparations and strategy for discussions with regulatory agency on litigation-related Matters."  In addition, the supplemental information provided after the Parties' October 2011 meet and confer provided in the privilege log states, "As discussed with Attorney Falk in the meet and confer on 10/26, this document is Greg Collier's handwritten notes from a strategy meeting with in-house legal counsel.  The topic of meeting was to prepare for discussions with the FDA.  Handwritten notes from meeting with legal counsel on top of an email previously produced to Plaintiffs (874386)." Further, in the materials submitted to the Court for an in camera inspection, P&G explained in greater detail the handwritten notes on the email.

Given the circumstances surrounding the creation of this email, the undersigned concludes that this case is distinguishable from *In re Seroquel Products Liability Litigation*, Case No. 06-1769-ORL-22DAB, 2008 WL 1995058, at *1 (M.D. Fla. May 7, 2008), which the Plaintiffs rely on in support of their contention that the email concerns primarily business advice relating to the FDA rather than legal advice and therefore is discoverable.  In particular, although, as correctly noted by the Plaintiffs, the court in *Seroquel* concluded that the attorney-client privilege attached to documents only if the primary or predominate purpose of the attorney-client consultation was to seek legal advice or assistance, in that case, the defendants asserted, among other things, that their in-house counsel's advice on product safety and efficacy issues was protected because it  had "profound legal implications for risk assessment and analysis, as well as regulatory advice, and advice regarding actual or potential litigation." *Id*. at *5.  In addition, the Court characterized the defendants' claims of privilege as reaching "all documents created in the very broad context of seeking FDA approval, correspondence

pertaining to FDA review or approval, working of package inserts, product advertising, promotional materials considered labeling, and oral promotional activities,..." *Id.* at *6. The court, in rejecting the defendant's broad application of the attorney-client privilege stated,

> This argument goes way too far. Almost any act by a business (or an individual for that matter) carries the potential for running afoul of some law or regulation or giving rise to a civil action. The pharmaceutical industry is subject to more regulation and more complex regulation than some other industries (though less than some others). The fact of extensive or pervasive regulation does not make the everyday business activities legally privileged from discovery. Routine inclusion of attorneys in the corporate effort of creating marketing and scientific documents does not support the inference that the underlying communications were created and transmitted primarily to obtain legal advice as is required to justify a privilege.

*Id.* at *7.  The Court then cited *In re Vioxx,*, and stated, "The great bulk of [the litigant's] privilege claims suffer from [the] approach of simply relying on an attorney's tangential involvement in the process of creating a document to shield the entire process of gathering information and drafting, revising the document.  This collaborative effort argument, if successful, would effectively immunize all internal communications of the drug industry, thereby defeating the broad discovery authorized in the Federal Rules of Civil Procedure."  *Id.*, citing *In re Vioxx,* 501 F. Supp. 2d 789, 796 (E.D. La. 2007) (internal quotations omitted).

In contrast, in the case at bar, the one sample document submitted which references the FDA (Privilege Log Entry No. 4760), contains hand-written notes taken of statements made by P&G's counsel regarding a future meeting with the FDA, including specific reference to the litigation at hand.   The Declaration of Greg Collier supports the Defendants' contention on this issue.  Thus, while the Plaintiffs are correct that advice

from counsel related to the business determinations for purposes of ensuring regulatory compliance likely would not be protected by either the attorney-client or work product doctrine, when that advice is dispensed, not in the regular course of business, but in response and/or in contemplation of litigation, the protection may apply. Such a conclusion is wholly consistent with the holdings in *Seroquel* and *Vioxx*. Indeed, in *Vioxx*, the Court in defining the scope of the attorney-client privilege for correspondence and/or documents generated by or sent to in-house counsel at a corporation, quoted *Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136 (D. Del. 1977), by stating, "[o]nly if the attorney is 'acting as a lawyer'-giving advice with respect to the legal implications of a proposed course of conduct-may the privilege be properly invoked. In addition, if a communication is made primarily for the purpose of soliciting legal advice, an incidental request for business advice does not vitiate the attorney-client privilege." *Id.* at 798-99.

Privilege Log Entry No. 4760 falls squarely into this description. Finally, the fact that the notes were made by Greg Collier, an employee of P&G, rather than counsel does not alter this analysis because the notes memorialized legal advice dispensed by Counsel to its client. In other words, the notes are no less protected than a letter from Counsel setting forth legal advice would be. Similarly, documents made for purposes of communicating information to a litigant's attorney are protected by the attorney-client privilege. *See e.g. Clark v. Buffalo Wire Works, Co.*, 190 F.R.D. 93 (W.D.N.Y. 1999) (concluding that handwritten notes were made to communicate with his attorneys for purposes of seeking legal advice); *Bernbach v. Timex Corp.*, 174 F.R.D. 9 (D. Conn. 1997) (same). Thus, the document is protected by the attorney-client privilege, and is not discoverable.

      d.    **Work Product Projects Related to Product Analysis and Adverse Events**

P&G contends that the documents in this category (Privilege Log Entry Nos. 9367, 11175, 11176) relate to legal advice and work product projects involving product analyses and adverse event reports.  P&G asserts that each of these documents was prepared at the direction of counsel and in support of litigation defense efforts.  P&G contends that pursuant to Federal Rule of Civil Procedure 26(b)(3), documents protected by the work product doctrine need not be authored by an attorney but rather may be protected if the document is created by a party's agent in anticipation of litigation.

At the outset, the undersigned notes that the documents at issue were created after the Denture Cream Products Liability Litigation was commenced.  In addition, the Defendants' contention that the documents are from the file of Bladimir Ovando, Ph.D, a Senior Scientist at P&G in the Product Safety and Regulatory Affairs Department in the Global Oral Care Division, and were generated at the request of in-house and litigation counsel is supported by the Declaration of Dr. Ovando, which was submitted to the Court, ex parte.  The Declaration makes clear that the documents at issue were generated in 2011 as part of crafting a litigation strategy for the Denture Cream litigation and contain references to a "legal" issue.  Thus, although the Plaintiffs have contended that the documents may not be considered privileged because there is no attorney identified on the communication, i.e. Category A, again this fact, standing alone does not render the document discoverable.

Privilege Log Entry No. 9367 has been provided to the undersigned in both its redacted and unredacted form, and thus the undersigned is able to ascertain that only those portions of the document which are "legal" so far as they relate to the strategies

regarding the Denture Cream Litigation, have, in fact been redacted, rather than the entire document.  As such, the document is protected by the attorney-client privilege.

Privilege Log Entry Nos. 11175 and 11176 are protected by the work product doctrine.  The Defendants' assertion regarding the creation of these documents is supported by the Affidavit of Lori Combs, a senior scientist in the Global Safety Surveillance department at P&G.  Thus, the documents in this category are protected by the work product doctrine and are not discoverable.

### D.   Application of Local Rule 26.1(g)(3)(C)

The Parties disagree as to whether Local Rule 26.1(g)(3)(C), as applied to this action, required the Defendants to include documents on the privilege log that were created after the instant litigation was initiated.  While the Plaintiffs do not dispute that Rule 26.1(g)(3)(C) permits the exclusion of these documents from the privilege log, the Plaintiffs contend that the Defendants waived their right to omit these documents from review when they included these documents on the privilege log in order to comply with the disclosure requirements for a matter pending in another jurisdiction.  Thus, the Plaintiffs argue that any documents that were created after the initiation of this law suit that were placed on the privilege log, albeit for purposes of a different action pending in a different jurisdiction, may be submitted to the Court for an in camera review to ascertain whether the documents are, in fact, privileged or otherwise protected from disclosure.

The Defendants contend that they included these documents in the privilege log only for a different action, the Pennsylvania Court of Common Please Denture Adhesive Cream Mass Tort Program ("MTP"), due to the need to comply with disclosure requirements for that specific jurisdiction (DE # 1624 at 9).  The Defendants therefore contend that any documents that satisfy the requirements of Local Rule 26.1(g)(3)(C)

should not be subject to an *in camera* review by this Court because the Defendants were never required to list those documents in the privilege log in the first place.

The undersigned concludes, for the following reasons, that the P&G Defendants have not waived their right to refrain from placing documents on the privilege log for this action which were created after the initiation of this litigation as contemplated by Rule 26.1(g)(3)(C), simply because those documents were placed on the privilege log to comply with the requirements of an action pending in another jurisdiction.  First, there is no indication that the Defendants intended to waive their rights to rely on this Local Rule by listing documents on the privilege log that conformed with the privilege log requirements of the MTP litigation.  In this regard, the undersigned notes that the argument advanced by the Plaintiffs is not that the P&G Defendants disclosed privileged documents thereby waiving any privilege to those documents, but rather that the P&G Defendants waived their right to not identify on the privilege log communications between counsel and P&G, after the commencement of litigation in this action.  The Plaintiffs fail to identify relevant legal support for this claim.  The local rule presumes that communication between a party and its litigation counsel after the commencement of litigation are privileged and thus including those communications on a privilege log would be inefficient.  The Plaintiffs have failed to establish that the general requirements of this local rule should be modified in this case.

Moreover, it is entirely unclear whether the Plaintiffs have withheld the production of their own documents based upon this Local Rule.  Thus, it would be patently unfair to extend the benefit of this rule to one litigant in this action, and deny it to the other, where it is clear that the Defendants intended to withhold the identification of those documents in this action.

Therefore, the undersigned concludes that the P&G Defendants did not waive their right pursuant to Local Rule 26.1(g)(3)(c) to refrain from including documents on their privilege log between P&G and their counsel that were created after the initiation of this litigation.  Thus, to the extent that the P&G Defendants have not already submitted documents in camera for the Court to review for purposes of determining whether the documents are protected from disclosure, the undersigned concludes that if the documents satisfy the dictates of Local Rule 26.1 (g)(3)(C), they need not be placed on the Defendants' privilege log, and thus need not be submitted to the Court for review.

V.    CONCLUSION

Therefore, based upon the arguments advanced by the Parties, the sample documents submitted for an in camera review, a review of the record as a whole, and for the reasons set forth above, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion to Compel the Proctor and Gamble Defendants to Produce a Final Privilege Log and Documents Improperly Designated as Privileged Following *In Camera* Review (DE # 1582) is **DENIED,** except to the extent that P&G must produce documents similar to those sample documents as to which P&G withdrew its claim of privilege during the March 2012 conference with Plaintiffs' counsel.  If P&G has not already produced such documents, it must do so within thirty (30) days from the date of this order.  P&G shall file a notice of compliance with this Order, accompanied by an affidavit which describes this review.

**DONE AND ORDERED** in chambers in Miami, Florida on October 18, 2012.

_Andrea M. Simonton_
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

41

**Copies furnished via CM/ECF to:**
**The Honorable Cecilia M. Altonaga**
**United States District Judge**
**All counsel of record**