UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  09-2051-MD-ALTONAGA/SIMONTON

In re:

DENTURE CREAM PRODUCTS
LIABILITY LITIGATION,
_____/

ORDER DENYING PLAINTIFFS' MOTION
TO UNSEAL RULE 26 CASE GENERAL EXPERT
DISCLOSURES AND UNDERLYING P&G DOCUMENTS
FOR THE LIMITED PURPOSE  OF
FDA DISCLOSURE

Presently pending before the Court is Plaintiffs' Motion to Unseal Plaintiffs' Rule

26 Case General Expert Disclosure and Underlying P&G Documents for the Limited

Purpose of FDA Disclosure (DE # 1844).  The Proctor & Gamble Defendants ("P&G") have

filed a Response to the Motion (DE # 1883), and the Plaintiffs have filed a Reply (DE #

1900).  The Motion has been referred to the undersigned Magistrate Judge (DE ## 611,

1048).  For the following reasons, the Plaintiffs' Motion to Unseal Plaintiffs' Rule 26 Case

General Expert Disclosure and Underlying P&G Documents for the Limited Purpose of

FDA Disclosure is Denied (DE # 1844).[1]

I.     PROCEDURAL HISTORY

This Multi-District Litigation ("MDL") involves claims by numerous Plaintiffs

alleging primarily neurological injuries purportedly caused by the ingestion and/or use of

denture cream products manufactured, labeled or distributed by various Defendants

including The Procter & Gamble Distributing LLC, The Procter & Gamble Manufacturing

_____

[1] This Order is not being filed under seal because, although the documents and
information in dispute have been designated confidential and filed under seal with this
Court, this Order does not disclose any confidential information contained in those
filings.

Company and The Procter & Gamble Company (collectively "P&G").  While the claims raised by the individual Plaintiffs vary, in general, Plaintiffs assert causes of action sounding in strict products liability, negligence, intentional and negligent misrepresentation, breach of warranty and failure to warn as to "Fixodent Denture Cream" a product manufactured by P&G.

<u>**CONFIDENTIALITY AND PROTECTIVE ORDER (CMO # 2)**</u>

Significant for purposes of the Motion at bar, during the course of this litigation, the Court issued Case Management Order # 2 ("CMO # 2") a confidentiality and protective order which sets forth the procedures to be followed by the Parties related to the disclosure of certain confidential materials during the course of discovery (DE # 78).

That Order provides in relevant part, in paragraphs 2 and 3,

> "Confidential Information" as used herein means any information that Plaintiffs or any Defendant believe in good faith to contain a trade secret or other confidential research, development, or commercially sensitive information, information protected by HIPAA or similar data privacy statutes, or other confidential and non-public information and that is designated as "Confidential" by any party, whether it be a document, information contained in a document, information revealed during a deposition, information revealed in an interrogatory answer or otherwise. . . .

> "Attorneys' Eyes Only" as used herein means information that any Defendant believes in good faith to contain highly sensitive or proprietary or trade secret data.  For purposes of this Order, "Attorneys' Eyes Only" information includes but is not limited to, product formula information, design information, non-public financial information, pricing information, and certain study methodologies.

(DE # 78 at 2).  In addition, in paragraph 7, CMO # 2 provides,

> An identical Confidentiality and Protective Order will be or has been entered in the Pennsylvania Court of Common Pleas Denture Adhesive Cream Mass Tort Program, June

Term 2009, No. 4534 ("Philadelphia MTP"), which contains identical definitions of "Qualified Persons."[2]  The parties agree that Confidential and "Attorney's Eyes Only" Information produced in the Litigation may be shared with Qualified Persons in the Philadelphia MTP, pursuant to and subject to the provisions of these Confidentiality and Protective Orders.  All Confidential and "Attorneys' Eyes Only" Information produced or exchanged in the course of this Litigation shall be used solely for the purpose of preparation and trial of this Litigation or the Philadelphia MTP.  Confidential and "Attorneys Eyes Only" Information shall not be disclosed to any other person except in accordance with the terms hereof.  Confidential and "Attorneys' Eyes Only" Information shall not be shared with any counsel for Plaintiff who is not specifically identified as counsel of record in the Litigation or in the Philadelphia MTP without the specific consent of the Defendants.  Confidential and "Attorneys' Eyes Only" Information shall not be disclosed to any other person except in accordance with the terms hereof and in accordance with the limitations, provisions and definitions of Qualified Persons in Paragraph 6 above.

(DE # 78 at 5-6).  The Order further provides in paragraph 9,

Confidential or "Attorneys' Eyes Only" Information shall not be disclosed or made available to persons other than Qualified Person, except to the extent the documents or information are required by law to be provided to a third party. . . ..Nothing herein shall preclude the parties, their attorneys, experts or consultants from using their own Confidential or "Attorneys' Eyes Only" Information as they deem appropriate.

(DE # 78 at 7).  In paragraph 13, the Order states,

The parties may challenge the propriety of a Confidential or "Attorneys' Eyes Only" Information designation at any time prior to the entry of the final Pretrial Order, by motion with at least ten (10) business days' notice to the designating party.. . .The motion. . . shall set forth the specific Confidential or "Attorneys' Eyes Only" Information that the party is challenging and the basis for the challenge with respect to

---

[2]  The Philadelphia MTP is a separate but similar MDL wherein Counsel herein represent the same, or analogous, Parties or interests.

3

each piece of such Information being challenged.

(DE # 78 at 8).  In paragraph 23, the Order provides, "Nothing herein shall be deemed to restrict in any manner each party's use of its own Confidential or 'Attorneys' Eyes Only' Information." (DE # 78 at 15).  In paragraph 29, the Order provides, "The burden of proving the propriety of any 'Confidential' of 'Attorneys' Eyes Only' designation as contemplated in this Confidentiality Order shall rest solely with the party who has made the designation." (DE # 78 at 16).

In addition, paragraph 15 of the Order addresses the possibility of documents designated as "Confidential" or "Attorneys' Eyes Only" being the subject of a subpoena from an administrative body as follows,

> If Confidential or "Attorneys' Eyes Only" Information in the possession of a Qualified Person is subpoenaed by any court, administrative or legislative body, or any other person or organization purporting to have authority to subpoena such documents or information, the party to whom the subpoena is directed shall not, to the extent permitted by applicable law, provide or otherwise disclose such documents or information without first waiting ten (10) business days after notifying other counsel in writing. . . .Confidential or "Attorneys' Eyes Only" Information shall not be produced until any objections by the producing party have been resolved.

(DE # 78 at 9-10).

II.    **THE POSITIONS OF THE PARTIES**

Plaintiffs have filed the instant motion seeking to have Plaintiffs' Rule 26 expert reports authored by Drs. Askari, Grainger, Lautenbach and Smith and the P&G documents relied upon in those reports unsealed and disclosed to the FDA.[3] In support

---

[3] Defendant P&G contends that 114 documents containing 9,413 pages which have been designated by P&G as either "Confidential" or "Attorney's Eyes Only" which the Plaintiffs' experts have relied upon in drafting their expert reports are at issue (DE #

of this request, the Plaintiffs argue that the "zinc hazard from Fixodent and resulting copper deficiency myelopath greatly concern the health and safety of the public–interests of the highest order.  These interests outweigh the need for confidentiality in this context and favor unsealing the documents for the limited purpose of disclosure to the FDA." (DE # 1846 at 7).   Further, the Plaintiffs contend that P&G has improperly influenced the FDA with data that gives the appearance of safety, whereas the Plaintiffs' experts set forth a different analysis regarding the safety of P&G's product.

In addition, the Plaintiffs contend that Federal Rule of Civil Procedure 26 does not prevent disclosure and that there is strong presumption in favor of public access to judicial proceedings.  The Plaintiffs further contend that P&G has failed to provide good cause for the documents remaining sealed and assert that P&G's fear of damage to is reputation or product sales following the disclosure of the Plaintiffs' experts' opinions does not outweigh the public's health safety and welfare, and does not exist because disclosure would be limited to the FDA.

Plaintiffs also assert that because P&G previously produced certain unpublished studies and assessments to the FDA, it has waived its right to keep those documents as well as similar or related documents confidential.  Finally, Plaintiffs argue that the FDA can protect any confidential company information by heavily redacting those documents prior to public disclosure.  Finally, the Plaintiffs state that they are willing to redact clear trade secrets, such as information from the expert reports where that information is not an essential component of the Plaintiffs' experts' analyses (DE # 1846 at 17).

_____

1883-1 at ¶ 16).  The Plaintiffs, on the other hand, contend that the total number of documents at issue are less than one-third the number of pages identified by the Defendant due to duplicates of the documents (DE ## 1900 at 8, 1901 at ¶ 11).

In Response, P&G first contends that the Plaintiffs' Motion should be denied because the Plaintiffs have failed to comply with the requirements of CMO # 2 prior to filing the Motion to Unseal. In addition, as to the confidentiality of the documents at issue, Defendant P&G asserts that the documents have been properly designated as either "Confidential" or as for "Attorneys' Eyes Only" because they fall into the following categories:

1.  P&G studies conducted or planned, including zinc dissociation and ingestion clinical studies, clinical consumer studies on marketed products, marketed competitor products, and pre-market/experimental products, and pharmocokinetic studies on marketed Fixodent products, including study design documents, protocols and drafts of the same;

2.  Safety assessments of both pre-market/experimental and post-market P&G denture adhesive products;

3.  Lab notebooks and handwritten notes of internal meetings among P&G safety scientists as well as meeting with external consultants regarding Fixodent studies being performed by the Company;

4.  Internal P&G memoranda, emails, and PowerPoint presentations regarding consumer and safety studies;

5.  Memoranda regarding sales and shipping data of Fixodent and incidence of reported adverse events; and,

6.  Internal P&G policies and procedures of the safety and regulatory departments.

(DE # 1883 at 11-12).  In support of these categorical designations and in further support of its opposition, P&G has filed the Declaration of W. Greg Collier, Ph.D, the current Director of Product Safety and Regulatory Affairs for Global Oral Care at Proctor and Gamble (DE # 1883-2).  Mr. Collier states that the documents sought to be released by the Plaintiffs are restricted, non-public documents.

6

In addition, in the Declaration, Mr. Collier states that he is the primary contact for the FDA at P&G, and that to his knowledge there are no outstanding requests or inquiries from the FDA for information related to Fixodent Denture Adhesive.   Mr. Collier states that in May of 2010, he communicated with the FDA wherein he advised the FDA that P&G had conducted a pharmacokinetic study on Fixodent and offered to forward the FDA the supporting documents for that study.  Mr. Collier states that the FDA declined his offer but suggested that P&G instead publish the study so it could be peer-reviewed.

In their Reply, the Plaintiffs do not challenge the categorical designations of the documents identified by the Defendant as being initially improperly designated as either "confidential" or "attorneys' eyes only", but rather contend that because P&G has filed similar documents in the Philadelphia MTP and previously submitted certain documents to the FDA, P&G has waived any confidentiality related to those documents (DE # 1900). In addition, the Plaintiffs contend that the documents at issue cannot be considered trade secrets because P&G has failed to keep them "secret" which is a necessary requirement of extending trade secret protection to those documents.

III.    **LEGAL ANALYSIS**

A.    **Pursuant to CMO #2, the Plaintiffs may Challenge the Confidentiality and "Attorneys' Eyes Only" Designations of the Documents at Issue**

At the outset, the undersigned addresses P&G's contentions that the Plaintiffs' Motion should be denied because the Plaintiffs failed to comply with and abide by the terms of CMO # 2 (DE # 1883 at 3-5).  Specifically, P&G asserts that the Plaintiffs seek to circumvent the terms of CMO # 2 by ignoring those portions of CMO # 2 which limit disclosure of confidential documents for use in this MDL and the Philadelphia MTP, only. In this regard, P&G contends that pursuant to CMO # 2, Plaintiffs are required either to

obtain P&G's consent to disclose the documents to the FDA, or, to comply with the procedural protections of CMO #2, which the Plaintiffs have failed to do (DE # 1883 at 7). Finally, P&G contends that the Plaintiffs failed to meet and confer prior to filing the instant Motion as required by CMO #2.  For the following reasons, P&G's arguments fail.

First, P&G misapprehends the nature of CMO # 2 with regard to how a party may challenge documents exchanged during discovery which have been designated as confidential.  Indeed, the express terms of CMO # 2, provide that the parties may challenge the propriety of a Confidential or "Attorneys' Eyes Only" information designation prior to the entry of the final Pretrial Order (DE # 78 at 7).  As such, because the Pretrial Order has not been entered in this action, the Plaintiffs' challenge to P&G's confidentiality designations through filing the instant Motion to Unseal is timely and permitted under CMO # 2.

Moreover, the documents at issue were unilaterally designated as either Confidential or for "Attorneys' Eyes Only" by the Defendant based upon the stipulated confidentiality agreement between the Parties which was incorporated into the Court's Case Management Order No. 2.  Therefore, the confidential designations were never subjected to a review for "good cause" by the Court prior to such designation.   As correctly noted by the Plaintiffs, the mere fact that a Party designates a document as either "confidential", for "attorney's eyes only" or as containing "trade secrets" pursuant to a confidentiality agreement does not, in and of itself, mean that those documents are, in fact, confidential. See *In re Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F.Supp. 2d 1353, 1362 (N.D. Ga. 2002) (O'Kelley, J.) ("calling a document confidential does not make it so in the eyes of the court; these consensual protective orders merely delay the inevitable moment when the court will be called upon to

determine whether Rule 26(c) protection is deserved").  Thus, if the documents at issue are deemed to not be confidential based upon the Plaintiffs' challenge, then the limitations of disclosure which the Defendant cites to, would not apply.  In that case, Plaintiffs' expert reports and the P&G documents upon which they rely could be disclosed by the Plaintiffs to the FDA, notwithstanding the CMO #2 limitations.

Third, as discussed at greater length below, the language in paragraph 23 of the CMO # 2 which P&G points to as permitting P&G to use the confidential documents in whatever manner it likes, does not, in and of itself, prevent the Plaintiffs from challenging whether the documents at issue were properly designated and remain confidential.  In other words, the crux of the Plaintiffs' Motion is not that P&G may not submit its documents to the FDA, or may not use the documents in any manner it chooses, but rather that the documents may lose their confidential protection if they are disclosed to other entities not a party to the confidentiality agreement, the documents are filed in the court record, or the confidentiality of the documents is otherwise waived.  Accordingly, the language of paragraph 23, does not foreclose the Plaintiff from seeking to have the documents at issue unsealed.

Finally, P&G's contention that the Plaintiffs' Motion should be denied because the Plaintiffs failed to meet and confer with the Defendants regarding the specific documents at issue is without merit, where, as here, it is clear that the Plaintiffs informed P&G of the documents that the Plaintiffs sought to submit to the FDA and equally clear is the fact that P&G would not agree to waive or otherwise remove the "Confidentiality" and "Attorney's Eyes Only" designations for those documents.  In particular, the Plaintiffs' Rule 26 Expert Reports reference certain P&G documents and also include a list of the P&G materials relied upon in drafting those reports (DE ## 1844-

9

1 at 55, 122-23, 156-57; 1844-2 at 138-139).  The May 14, 2012, correspondence from P&G's counsel to co-lead counsel for Plaintiffs in this action, submitted in support of the Plaintiffs' Motion to Unseal, unequivocally states that P&G will not agree to remove any confidential designations of the materials relied on by the Plaintiffs' experts and references P&G's compliance with providing information requested by the FDA (DE # 1844-2 at 138).  Further, according to the Affidavit of Plaintiffs' Counsel, the Parties met on May 16, 2012, regarding the disclosure of certain deposition transcripts to the FDA and were unable to reach a resolution on that issue (DE # 1847 at 3).  Thus, although P&G contends that the Plaintiffs failed to meet and confer on the specific documents in dispute, it is apparent to the undersigned that P&G knows which documents were at issue, and that the Plaintiffs seeks to release those exact documents to the FDA.  It is also clear that, with the exception of those documents identified as falling within the public realm of scientific articles or literature, the Parties had reached an impasse on the disclosure of documents to the FDA that the Plaintiffs' experts had relied upon in crafting their expert reports.  As such, the undersigned concludes that the meet and confer requirements of CMO # 2 were satisfied in this instance.[4]

---

[4]  The undersigned concludes that the CMO # 2 meet and confer requirements were satisfied due to the nature of umbrella protective orders and because of P&G's blanket refusal to remove confidential designations generally from any of the documents relied upon by the Plaintiffs' experts, other than certain unspecified documents falling into the category of the public realm.  *See generally, Chicago Tribune Co., v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1316-17 (11th Cir. 2001) (Black, specially concurring) (discussing the propriety of a general challenge to an umbrella protective order rather than a document by document challenge).  Since the arguments presented by the Plaintiffs apply to the group of documents as a whole, the undersigned concludes that it is appropriate for Plaintiffs to seek review on that basis. However, the present Motion does not sufficiently identify for the Court any particular documents as to which the confidentiality designation is challenged by the Plaintiffs. Further, although the Reply is more specific with respect to the contention that now-publicly available documents remain designated as "confidential", the Reply is still general and a Reply is

Simply put, the Plaintiffs' Motion will not be denied due to the Plaintiffs' purported failure to comply with CMO # 2. The Court now turns to the substance of the Plaintiffs' request to unseal certain P&G documents.

### B.   The Common-Law Right of Access to Judicial Proceedings

The Plaintiffs contend that the documents at issue should be unsealed and disclosed to the FDA because "there is a strong presumption in favor of public access." (DE # 1846 at 9).  The common-law right of access to judicial proceedings is said to be "an essential component of our system of justice, [that] is instrumental in securing the integrity of the process." *Chicago Tribune Co., v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001), citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564-74 (1980).  The common-law right of access includes the right to inspect and copy public records and documents.  *Chicago Tribune Co.,* 263 F. 3d at 1311 *citing Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 597 (1978). That right, however, is not absolute, and a judge's exercise of discretion in deciding whether to release judicial records should be informed by a "sensitive appreciation of the circumstances that led to... [the] production [of the particular document in question]." *Id.*

In addition, the common-law right of access to judicial proceedings does not apply to discovery materials, "as these materials are neither public documents nor judicial records." *Chicago Tribune Co.*, 263 F.3d at 1311 (citation omitted). Similarly, material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution

---

not the place to raise new arguments.  Accordingly, the Court is unable to evaluate the Plaintiffs' challenges on a document by document basis, and thus limits the instant analysis to the Plaintiffs' general challenge to the universe of documents relied upon by Plaintiffs' experts.

of the merits is subject to the common-law right. *Id.* at 1312.

In this case, it is undisputed that the documents at issue were exchanged between the Parties during discovery and further that the documents have not been filed in this Court record, other than for purposes of the instant Motion, which pertains to disclosure of discovery materials.  Thus, the common law right of access to judicial proceedings does not apply under the facts of this case, and as such, the undersigned does not consider that right in determining whether the discovery documents at issue should be disclosed to the FDA.[5]

### C.   Defendant P&G Has Shown Good Cause for Designating the Documents as either Confidential or "Attorneys' Eyes Only"

As noted above the documents at issue were designated as either confidential or for attorneys' eyes only by the Defendant based upon the stipulated confidentiality agreement between the Parties which was incorporated into the Court's Case Management Order No. 2.  Federal Rule of Civil Procedure 26(c) entitled "Protective Orders" provides that a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  In addition, relevant to this litigation, Rule 26(c) permits a court upon motion of a party to make a protective order requiring "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(1)(G). The prerequisite is a showing of "good

---

[5]  Although the Plaintiffs have alleged that P&G has filed similar documents into the court record in the MTP, the documents at issue have not been filed into the record in this case, and thus the common law right of access does not apply to documents that have not been filed in the instant proceeding.  Rather, any contention regarding the filing of documents into the Court record in the MTP litigation only goes to the argument that P&G has waived its right to confidentiality.

cause" made by the party seeking protection.  *Chicago Tribune Co.*, 263 F.3d at 1313, citing Fed. R. Civ. P. 26(c)(7).[6]  Federal courts have superimposed a balancing of interests approach for Rule 26's good cause requirement. *Farnsworth v. Procter & Gamble, Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (citations omitted). This standard requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential. *Id.* [7]

In application of these standards, in *Chicago Tribune Co., v. Bridgestone/Firestone Inc.*, 263 F.3d 1304 (11th Cir. 2001), the Eleventh Circuit examined a trial court's decision to, at the request of the non-party press, unseal documents that had previously been sealed pursuant to a protective order entered by stipulation of the parties.[8]  The reviewing Court vacated and remanded the case with instructions to the district court to determine whether "good cause" existed for maintaining the documents under seal.  In so doing, the reviewing Court directed the trial court to determine whether the presumptively confidential documents did in fact contain "trade secrets" by examining whether: 1) the

---

[6] The numbering of Rule 26 related to "trade secrets" was amended subsequent to the Court's ruling in *Chicago Tribune*, but the language is the same under 26(c)(1)(G) as it was under 26(c)(7).

[7]  The Plaintiffs have not asserted that they have a First Amendment right to access the documents at issue. *cf. Chicago Tribune Co.*, 263 F.3d at 1310.  However, even if the Plaintiffs had advanced such an argument, the undersigned notes that where discovery materials are concerned, the First Amendment constitutional right requires an identical  showing  to that of Rule 26(c) of the Federal Rules of Civil Procedure. *McCarthy v. Barnett Bank of Polk County*, 876 F.2d 89, 91 (11th Cir.1989) (citations omitted). Accordingly, where a third party seeks access to material disclosed during discovery and covered by a protective order, the constitutional right of access, like Rule 26, requires a showing of good cause by the party seeking protection. *Id*.

[8]  Members of the press included the Chicago Tribune Company, the Washington Post Company, CBS Broadcasting, Inc., and Los Angeles Times Communications, LLC, who sought to, and were granted the right to intervene in the action after settlement, for purposes of unsealing the "confidential" documents.  *Id.* at 1308.

party asserting the protection consistently treated the information as closely guarded secrets; 2) the information represented substantial value to that party; 3) the information would be valuable to the party's competitors; and 4) the information derived its value by virtue of the effort of its creation and lack of dissemination. *Id.* at 1313-14.

In this case, as stated above, P&G has asserted that the documents at issue fall into several categories which establish good cause for sealing the documents pursuant to Fed. R. Civ. P. 26(c). Those categories are set forth in the Declaration of Greg Collier which also sets out detailed explanations as to why the documents and information in those designations are non-public and how access to those documents is restricted (DE # 1883-1 at 83-86). The Declaration also explains that P&G studies of denture adhesive products require hundreds of employee hours of work, costs hundreds of thousands of dollars to plan, implement and analyze, have substantial commercial value and are of substantial value to other denture adhesive manufacturers. *Id.* Further, the Declaration states that P&G's study reports disclose in detail the protocols and methodologies applied in those studies and also contends that the documents that the Plaintiffs seek to disclose reveal explanations of the rationales for past studies and studies that P&G chose not to conduct. The Declaration also states that regulatory or public disclosure of the proprietary research would unfairly make P&G an unwilling "Research and Development" arm of its own competitors.

As stated above, the Plaintiffs do not challenge the initial categorical designations of the documents identified by the Defendant as being either "confidential" or "attorneys' eyes only", but rather contend that because P&G has filed similar documents in the Philadelphia MTP and previously submitted certain documents to the FDA, that P&G has waived any confidentiality related to those documents (DE # 1900). In addition, the

14

Plaintiffs contend that the documents at issue cannot be considered trade secrets because P&G has failed to keep them "secret", a necessary requirement for extending trade secret protection to those documents.  Thus, in essence, the Plaintiffs only challenge the first factor set out by the Eleventh Circuit in *Chicago Tribune*, whether P&G consistently treated the information at issue as closely guarded secrets.  Indeed, the Plaintiffs do not dispute that the statements in the Declaration of Greg Collier support a finding that the documents in dispute: 1) contain information that represents substantial value to P&G; 2) would be valuable to P&G's competitors, and 3) derive their value by virtue of the effort of their creation and lack of dissemination, for purposes of constituting "trade secrets."  In addition, the Plaintiffs have failed to challenge the protected designation of the documents based upon those documents containing other confidential research, development, or commercial information, which also provide a basis for sealing documents under Rule 26(c). *See e.g. In re Yasmin & Yaz (Drospiernone) Mktg., Sales Practices and Prods. Liab. Litig.*, 3:09-md-02100-DRH-PMF, 2011 WL 5507057, *4-5 (S. D. Ill. Nov. 10, 2011) (finding product research, marketing related materials and documents revealing intellectual property as properly designated as "confidential").

Thus, based upon the statements contained in the Declaration of Greg Collier, which remain undisputed by the Plaintiffs, the undersigned concludes that P&G has satisfied the "good cause" standard for three of the four factors set forth in *Chicago Tribune* for purposes of demonstrating that the documents contain trade secrets and, are, in fact, confidential. The undersigned therefore now examines the first factor in *Chicago Tribune*, whether P&G has consistently treated the information as closely guarded secrets, or has waived its right to keep the designated documents confidential.

### D.   P&G has not Waived the Confidentiality of the Documents at Issue

The Plaintiffs assert that P&G has waived its rights to keep the documents at issue confidential by disclosing those documents to the FDA, as well as in the MDL litigation in Philadelphia.  In response, as discussed briefly above, P&G contends that under the terms contained in paragraph 23 of CMO # 2, P&G may use the documents at issue in any manner it chooses.  This retort misses the point of the Plaintiffs' contention that P&G's actions in purportedly disclosing the documents demonstrate that P&G has waived the confidentiality associated with those documents. Further, P&G does not deny that it has disclosed certain confidential documents to the FDA.  Thus, at first blush, Plaintiffs' argument has some appeal.  However, this argument is undercut by the fact that it is not the material that P&G has purportedly already disclosed to the FDA that the Plaintiffs seek to have unsealed, rather it is the underlying raw data of certain studies and other materials that have not been previously disclosed to the FDA by P&G that the Plaintiffs seek to disclose.  Indeed, tellingly, the Declaration of Eric T. Chaffin, Co-Lead Plaintiffs' Counsel in the instant case and Co-Liaison Counsel in the Philadelphia Mass Tort Program, which was submitted in support of the Plaintiffs' Motion to Unseal, states the following, "Many of these documents-which include pharmacokinetic ("PK") studies 1 and 2 documents and other underlying P&G documents-have already been submitted by P&G to the FDA, *at least in summary form*." (DE # 1847 at 2) (emphasis added).  Similarly, in Plaintiffs' Memorandum of Law in support of the Motion to Unseal, the Plaintiffs state, "The P&G Defendants have gone to great lengths to litigate this matter in secret in order to keep critical safety information from the FDA, the medical community, and the public." (DE # 1846 at 8).  Further, the Plaintiffs state the following,

P&G provided the FDA with an incomplete set of data.

16

>Specifically, P&G improperly influenced the FDA by exposing
>the FDA only to 'corrected' PK data that skewed results of the
>PK studies, and not the raw data or analysis done on the raw
>data by experts like Dr. Askari.  Likewise, the FDA has not had
>access to any analyses of the data other than P&G's biased
>reports in the flawed analyses of P&G's retained expert, Dr.
>Nelson, as discussed in detail below.  Further, P&G's 2010
>and 2011 safety assessments also misinterpret the PK results.

(DE # 1846 at 11).  The Plaintiffs continue the argument with "By contrast, Plaintiffs'

expert reports contain analyses of underlying raw data from the PK studies that P&G did

not submit to the FDA in order to distort the results of its PK studies." (DE # 1846 at 12).

Also, the Plaintiffs refer to errors in a particular report as being highlighted in Plaintiffs'

Rule 26 Disclosures "including the underlying P&G documents that the FDA *has never*

*seen*." (DE # 1846 at 15) (emphasis in original). Finally, the Plaintiffs argue that "P&G

should not be able to use the protections and guise of the Protective Order to conceal

from the FDA Plaintiffs' experts' analysis and opinions that offer a contrary view

regarding the safety  of Fixodent, which is supported by the raw data and uncorrected PK

study data that P&G has not provided to the FDA." (DE # 1846 at 18).

Thus, despite the Plaintiffs' contentions to the contrary, the information, data and

materials that the Plaintiffs seek to submit to the FDA are those very materials that have

not been previously disclosed by P&G to the FDA.  This conclusion is consistent with the

underlying complaint that Plaintiffs have raised about the failure of P&G to be forthright

in its disclosure to the FDA, in order to give the "appearance of safety where none

exists." (DE # 1845 at 8).  However, the fact that P&G, rightly or wrongly, chose to not

disclose certain information or documents to the FDA supports a finding that P&G did not

waive its claim to the confidential nature of those documents.  This conclusion is also

bolstered by the fact that the Plaintiffs further complain that the PK studies at issue have

not been "made available for public comment even though the FDA requested that P&G publish the PK studies for this purpose." (DE # 1846 at 11). Again, the fact the P&G has not released the studies at issue to the public weighs in favor of concluding that P&G has not waived the confidentiality as to the documents at issue.

As to the Plaintiffs' contention that the Parties' will likely in the future submit the documents at issue to the Court thereby waiving their confidentiality, that argument is not persuasive for purposes of resolving the Motion currently at bar. While it may well be true that at some point P&G will submit the documents in question to the Court for resolution of a dispute, *e.g,* Daubert motions, that has not yet occurred in this action, and thus, the undersigned will not speculate as to whether the documents at issue may at some time in the future, lose their protected status.

To the extent that the Plaintiffs imply that the documents at issue were already disclosed in the MTP in Philadelphia, it appears that the documents filed in the MTP were expert reports that provided similar analysis and "rel[ied] on similar documents" as those at issue and thus were not the exact documents which Plaintiffs now seek to have disclosed (DE # 1901 at 3).[9]   In addition, the Plaintiffs do not suggest that all of the documents upon which their experts relied were disclosed by P&G to the FDA, but rather Plaintiffs only specifically identify the "corrected" PK study data, rather than the raw data, the PK studies, the 2010 and 2011 Safety Assessment, and the Nelson Reports as being disclosed by P&G to the FDA.[10]   The Plaintiffs have advanced no argument for how

---

[9]  The undersigned expresses not opinion whether the MTP Court should permit disclosure of the documents filed in the MTP.

[10] According to the Plaintiffs, the Nelson reports relate to medical records Vanderbilt University produced in response to a subpoena issued by P&G (DE # 1846 at 7 n. 2).

P&G has therefore waived its right to the confidential designations as to the other documents which were, as implicitly conceded by the Plaintiffs, not disclosed to the FDA. In this regard, it is worth noting that the Plaintiffs have not suggested how those portions of the expert reports which cite only to the documents that were voluntarily provided to the FDA by P&G could be redacted in a meaningful way, and further, a review of the Plaintiffs' expert reports by the undersigned yields the conclusion that such an undertaking would be exceedingly difficult, if not impossible.[11]

Thus, because the undersigned has determined that P&G has not waived the trade secret, confidentiality or "Attorneys' Eyes Only" designations related to the documents in dispute, the undersigned further concludes that P&G has satisfied all of the factors set forth in *Chicago Tribune*, and thereby demonstrated that good cause pursuant to Fed. R. Civ. P. 26(c) exists to seal those documents.

### E.   Balancing Test Applied to Documents Designated Confidential by P&G

Once a court has determined that a party has established good cause for protecting the documents from disclosure pursuant to Rule 26(c), the court must then balance P&G's interest in keeping the information confidential against the Plaintiffs' contention that the disclosure serves the public's legitimate interest in health and safety. *Chicago Tribune Co.,* 263 F. 3d at 1315 (11th Cir. 2001).  The Court in *Chicago Tribune* held that remand was appropriate where the district court failed to make the requisite

---

[11]  The undersigned acknowledges that the Plaintiffs have suggested that the portions of the expert reports that refer to "clear" trade secrets, such as P&G formula cards, may be redacted prior to submission to the FDA.  However, because the Plaintiffs have not suggested a manner to redact essential components of the Plaintiffs' experts' analyses which rely on other confidential P&G documents, the undersigned finds that the Plaintiffs' suggestion does not resolve the issue presented by the Motion at bar.

factual findings that the public's health and safety were sufficiently impacted by the information contained in the documents to trump the defendant's interest in keeping trade secret information confidential. *Chicago Tribune Co.*, 263 F.3d at 1315.  In addition, the Court observed that the district court failed to discuss the defendant's reliance on the terms of the stipulated protective order between the parties, a claim which was supported by the fact that the information at issue was produced in discovery only pursuant to a protective order and was submitted by the plaintiff and not the defendant into the court record.  *Chicago Tribune*, 263 F.3d at 1315 n.15. Therefore, the reviewing Court directed the trial court, on remand, to consider whether the defendant had exhibited behavior consistent with its claim of reliance on the stipulated protective order or whether the defendant had submitted the disputed documents to "the public arena of courtroom proceedings" for purposes of seeking the resolution of the dispute. *Id*.

Similarly, in the case at bar, the undersigned concludes that the fact that P&G produced the confidential documents, at least in part, based upon P&G's reliance upon the agreed to Confidentiality Order, weighs in favor of keeping those documents sealed. Also, as previously mentioned, the documents at issue have not been placed in the "public arena of courtroom proceedings" by P&G in this case.  In addition, it is important to emphasize the fact that there is no indication or assertion that the FDA has requested the disputed documents, or even the Plaintiffs' expert reports, to be produced.[12]  The

---

[12]  In fact, the Plaintiffs' contention that portions of the documents at issue have either been already produced to the FDA or have been filed in the MTP litigation arguably supports a finding that the release of the documents at issue in this case is not necessary for public safety.  Rather, if the Plaintiffs are correct, similar documents presumably addressing similar concerns and reaching similar conclusions relevant to the public interest are already accessible to the FDA and public.  This necessarily lessens the need for the release of the confidential documents in this case.

absence of any such request undermines the Plaintiffs' contention that the disclosure of the documents is necessary because those documents greatly concern the health and safety of the public–interest of the highest order.  This is particularly true in light of the documents attached to the Affidavit of Melissa Korfhage, counsel for P&G,  submitted in opposition to the Motion which indicate that the media has reported on the alleged association between excess use of zinc containing denture adhesive and neurological injuries as early as May 5, 2009 (DE # 1883-1 at 3, 8-25).  In addition, according to the Korfhage Affidavit, in October 2011, the United States Food and Drug Administration released a public statement addressing the allegations of injuries resulting from the overuse of zinc containing denture adhesives, a copy of which is attached to the Affidavit (DE # 1883-1 at 3, 27-29).  Further, it is undisputed that the FDA issued a Notice in February 2011 to Denture Adhesive Manufacturers notifying those entities of reports of adverse events related to the use of denture adhesives and requesting their assistance in dealing with the "public health issue."  (DE # 1883-1 at 31-31).  Thus, it appears, and it is not contested by the Plaintiffs,  that both the public and the FDA have been and are aware of the potential dangers associated with the use of certain denture adhesives.  Despite this awareness, the FDA has not requested the production of documents related to the P&G denture cream studies from either P&G or the Plaintiffs, and has not sought to participate in this matter to assert an interest in obtaining the documents at issue here. Indeed, there has been no assertion that the FDA is incapable of seeking the production of the documents at issue through the use of its subpoena powers, if necessary, a scenario which is addressed in CMO # 2.  On the contrary, according to the Affidavit of Greg Collier, the FDA was made aware of P&G's  study and did not require P&G to produce such documents. Thus, the public interest as described by the Plaintiffs' does

not outweigh P&G's interest in keeping the documents confidential.

Similarly, the Plaintiffs' argument that the FDA is capable of protecting the confidentiality of any of the documents disclosed by P&G also fails to outweigh P&G's interest in keeping the documents confidential.  In this regard, the Plaintiffs have asserted that pursuant to 21 C.F.R. § 803, the FDA will be able to protect the confidential documents at issue from being disclosed to the public.  Section 803 of 21 C.F.R. addresses Medical Device Reporting requirements for manufacturers, importers or distributors of medical devices and provides, *inter alia*, that the FDA will only disclose any report submitted pursuant to that section to the public after deleting trade secret, or confidential commercial or financial information from the report to be disclosed. 21 C.F.R. § 803.9.  The Defendant contends that in this case, § 803.9 would not protect the documents from being disclosed because that section only applies to medical device manufacturers, importers or distributors, which the Plaintiffs, who would supply the information to the FDA, are not (DE # 1883 at 21).  Similarly, P&G contends that the protections of confidential information related to Freedom of Information Act ("FOIA") requests pursuant to 21 C.F.R. § 20.61, apply to the "person who submits records", and again under the circumstances of this case therefore would not provide P&G with an opportunity to contest the disclosure of the confidential materials to the public.  In response, the Plaintiffs contend that the Court may direct the FDA to treat the disclosed documents as confidential, or may direct P&G to submit the documents to the FDA, thereby bringing the documents within the purview of the protections set forth in the applicable CFR's.  However, even if the FDA is able to keep the documents confidential from public disclosure, this argument fails to account for the fact that, as discussed above, P&G has elected to keep certain documents confidential from the FDA, who is not

22

a party to this action.  Therefore, the FDA's ability to keep those documents within the confines of the FDA is of no moment here, absent a showing by the Plaintiffs that the public interest outweighs P&G's interest in keeping the documents confidential, even from the FDA.

It is for this same reason, that the Plaintiffs' argument that the concerns that P&G has related to a competitor obtaining an advantage over P&G if the documents are released is mitigated by the fact that the FDA is not a denture cream manufacturer or a P&G competitor, fails. Again, this fact alone does not outweigh P&G's interest in maintaining certain documents as confidential, particularly given the seemingly limited public interest at stake under the facts of this case.[13]

Finally, the undersigned finds the ruling *In re Yasmin & Yaz (Drospiernone) Mktg., Sales Practices and Prods. Liab. Litig.*, 3:09-md-02100-DRH-PMF, 2011 WL 5507057 (S. D. Ill. Nov. 10, 2011) persuasive.  In *In re Yasmin*, the Court examined whether it was appropriate to grant a plaintiff's motion requesting the right to petition the FDA by presenting certain confidential documents which the plaintiff contended concerned public health issues related to the oral contraceptives manufactured by the defendant. The defendant did not object to the plaintiff's request to petition the FDA but objected to the use of its confidential documents in that petition. The Court denied the plaintiff's motion finding that the plaintiff had no First Amendment right to disseminate confidential documents obtained through the discovery process and not otherwise filed with the court, despite the plaintiff's constitutional right to petition the government. *Id*. at *1.  In

---

[13]  The undersigned also notes that disclosure to the FDA may lead to non-party requests for further disclosure by the FDA, which in turn could jeopardize P&F's rights to confidentiality, and require litigation to resolve.

reaching that decision, the Court concluded that the defendant had met its burden of satisfying the "good cause" standard set forth in Fed. R. Civ. P. 26(c) to keep the documents at issue confidential, including "trade secrets" documents, as well as, nonpublic corporate product research documents, marketing related materials and intellectual property documents.

The Plaintiffs herein contend that *In re Yasmin* is distinguishable from the instant case for a number of reasons. First, the Plaintiffs assert that unlike in *In re Yasmin*, in this case, the documents at issue and prior court decisions have already been disclosed in the Philadelphia MTP, the defendants herein have disclosed documents to the FDA without assurances that the FDA will keep those documents confidential, and the defendants herein have "cherry-picked" the study-related documents submitted to the FDA (DE # 1900 at 7). The Plaintiffs further contend that the Illinois Trade Secret Act which was examined in *In re Yasmin* differs from the Florida law, and thus has no bearing in this case.

However, the Plaintiffs' contentions are merely distinctions without substantive differences. First, similar to P&G the defendant in *In re Yasmin*, P&G disclosed certain product research documents to the FDA. The Plaintiffs contend that P&G failed to obtain assurances from the FDA that the disclosed documents would be held confidential. The Plaintiffs, however, have submitted a letter from P&G to the FDA wherein P&G submitted several documents to the FDA related to the March 2010 Safety Assessment for Fixodent Denture Adhesive under a "Confidential Information" heading wherein P&G refers to the documents as containing proprietary, commercial information and requests that the FDA keep said documents confidential pursuant to 21 C.F.R. § 803.9 (DE # 1844-2 at 184). Thus, although it is unclear from the record whether P&G received assurances from the

FDA that disclosed documents would be kept confidential, it is clear that P&G requested such assurances.  Therefore, P&G's intentions regarding the disclosure of confidential documents to the FDA mirror those of the defendant in *In re Yasmin*.

Further, as to the differences in trade secret law, the Plaintiffs herein have not challenged the trade secret designation based upon an interpretation of Florida law, but rather have only asserted that P&G has failed to keep the "trade secrets" confidential and therefore have waived the right to prevent disclosure to the FDA.  Thus, differences between Illinois and Florida trade secret law, if any, are not relevant to the resolution of this dispute.  Finally, like the defendant in *In Re Yasmin*, P&G states that it does not object to the Plaintiffs' sharing their theories with the FDA but objects to the use of P&G's confidential materials and the Plaintiffs' experts' materials that discuss those confidential materials.

Accordingly, the undersigned finds the Court's reasoning in *In Re Yasmin* to be applicable to the instant dispute, and akin to the Court's ruling in that case, concludes that P&G is entitled to maintain the confidential status of the documents at issue in the instant Motion.

IV.    <u>CONCLUSION</u>

Therefore, based upon the arguments advanced by the Parties, and a review of the record as a whole, and for the reasons set forth above, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion to Unseal Plaintiff's Rule 26 Case General Expert Disclosure and Underlying P&G Documents for the Limited Purpose

of FDA Disclosure (DE # 1844) is **DENIED, without prejudice.**[14]

**DONE AND ORDERED** in chambers in Miami, Florida on January 18, 2013.

_Andrea M. Simonton_

**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF to:
The Honorable Cecilia M. Altonaga
        United States District Judge
All counsel of record

---

[14] The undersigned makes no determination as to whether the documents at issue should remain sealed if (1) the FDA seeks their disclosure in the future; (2) if those documents are filed with the Court; or, (3) with respect to a specific challenge as to a specific document.  This Order addresses only a request to permit disclosure of an entire group of discovery documents to an entity which has not sought access to documents.